**SMITH v. SPRINGDALE AMUSEMENT PARK, Limited, et al.**

No. 5335.

Circuit Court of Appeals, Sixth Circuit.

April 15, 1930.

See, also, 39 F.(2d) 92.

J. E. Sater, of Columbus, Ohio, and E. H. M'Caleb, of New Orleans, La. (Walter F. Murray, of Cincinnati, Ohio, and C. Arthur Anderson, of St. Louis, Mo., on the brief), for appellant.

Paul Bakewell, of St. Louis, Mo. (J. W. Heintzman, of Cincinnati, Ohio, on the brief), for appellees.

Before MOORMAN and HICKS, Circuit Judges, and ANDERSON, District Judge.

MOORMAN, Circuit Judge.

This suit, as originally brought, was for the infringement of eight patents issued to Owen B. Smith, each of which related to apparatus for dog racing. Before trial, and in response to interrogatories filed by the defendant, the plaintiff elected to rely upon but three of the patents, Nos. 1,379,224, 1,507,440, and 1,507,439. The trial court decreed the first and third of these valid, but not infringed, and the second invalid as involving only mechanical skill, but, if valid, not infringed. In holding patent 1,507,440 invalid for lack of invention, the court was at variance with the District Court of the Eastern District of Louisiana [21 F.(2d) 366] and the Court of Appeals of the Fifth Circuit [26 F.(2d) 1016]. Two of the patents, Nos. 1,379,224, and 1,507,440, were also litigated, in Smith v. Magic City Kennel Club, in the Northern District of Oklahoma, and held by the District Judge to be valid and infringed by devices similar to those alleged to infringe in this case. Upon appeal, however, from that decree, the Circuit Court of Appeals [38 F.(2d) 170] reversed the decree, holding that, if the patents were valid, they were restricted to the specific elements called for in their claims, and, as so construed, were not infringed.

Claims 1 and 2 of patent 1,379,224 are in issue. These claims call for a combination comprising the following elements: (1) A race course suited for dogs; (2) a casing extending around the outer side of the race course, or, as stated in claim 2, "on one side," and provided with a longitudinal opening; (3) a mechanical conveyor including a track extending around the race course, and located within the casing; (4) a conveyor or mechanical car operated upon the track and provided with an arm (as called for in claim 2 "hinged" to the car) extending through the longitudinal opening of the casing in a projecting position over the track, and adapted to carry a lure; and (5) a wheel rotatably mounted on and supporting the arm at the outer end thereof. It is stated for appellant in argument that the real invention disclosed by these claims is a "horizontal lure carrying arm attached to a traveling propelling operative motor or mechanism, and an arm extending outwardly, close to the surface of the race course, through a continuous longitudinal slot or opening in the housing which conceals such mechanism from the racing dogs."

It would be difficult to give to these claims the breadth of interpretation that is thus insisted upon without ignoring entirely the record in the Patent Office. The file wrapper shows that claims broad enough to cover such interpretation were made in the original application, but were rejected by the Patent Office, and, as amended, again rejected. These rejections, with the resulting limitations on the claims allowed, were brought about upon references to earlier patents in the same art. All of these earlier patents were for mechanical contrivances for carrying a lure in front of racing dogs. None of them used a horizontal arm, and in none of them was the lure mounted upon the end of the arm. In Everett, 1,052,807, the lure was attached to the end of a vertical arm which passed through the slot of an underground housing. Smith, 1,038,504, also had a vertical arm passing through a slot in an underground casing in which the motorcar and tracks were located. Walsh, 611,876, had a conveyor track aboveground separated from the race course by a fence, with a motor carrying a transverse pole or rod which extended over the fence and partially over the track. To the end of this rod he attached a rope or another rod to the end of which there was attached a support for the lure.

These patents sufficiently show that Smith was not a pioneer in the art. His device is perhaps more effective and better than any of the earlier devices. Whether it amounts to invention or was nothing more than the exercise of a high order of mechanical skill we need not determine, for in our opinion appellees' device does not come within the limitations which Smith imposed upon his claims in the Patent Office proceedings. It is contended for appellees that there is lack of analogy between their device and the patentee's in the location of the conveyor tracks, and it appears that there would be difficulties in adapting appellant's form of apparatus to a track located, as appellees' is, within the race course. We pass that question by, though, as less important than the rotatable mounted wheel and the hinged arm connection called for in appellant's claims. It is apparent that the rotatable wheel supporting the arm at the projecting end thereof is an essential element of both of the claims. This is entirely absent from the appellees' structure. Again, the hinge connecting the horizontal arm with the car, as specified in claim 2, and as used in appellant's practical device, is absent from appellees' construction. This hinge, because of the support given the end of the arm by the wheel, the circular shape of the race course, and the location of the mechanical conveyor on the outer side thereof, performs a substantial function in giving to the horizontal bar the flexibility that is needed to take up the vibrations that result from the operation of the car. If these two elements were eliminated from Smith's combination, it would be obviously inoperable for the purpose for which it was designed. The equivalent of neither of them is found in appellees' device. As both were specifically relied upon by the patentee in his specifications and claims, and were regarded by the Patent Office as essential to avoid references in the prior art, they are to be treated as limitations. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 259 F. 236 (6 C. C. A.); Lakewood Engineering Co. v. Stein, 8 F.(2d) 713 (6 C. C. A.); I. T. S. Co. v. Essex Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335. As so limited, the claims are not infringed by appellees' device.

The trial court was also right in dismissing the claim for infringement of patent No. 1,507,440. Claim 1 is typical. It calls for (1) a housing for covering tracks; (2) cars having laterally extending arms operated upon the track; (3) the combination of posts set in the ground at the side of the track; (4) timbers attached to the posts to form a frame; (5) boards attached to the timbers and posts to form a continuous inclosure above the track, and having a continuous opening on one side of the housing adapted to permit extension of a laterally extending arm therethrough; and (6) truss rods attached to the closed side of the housing adapted to support the side of the housing above the continuous opening. The composite result of these elements is a circular track inclosed in a housing which has a longitudinal opening in one side to admit a laterally extending arm therethrough. All of the elements in this claim were old and in common use. It was not invention to construct a wooden housing over a circular track with a longitudinal opening in one of the sides thereof. The longitudinal opening would seem to be anticipated by Bertram, No. 729,120, and the element of adjustable supports or truss rods is but a step that would be obvious to any skilled builder who, having the same problem to deal with, would resort to truss rods or some other familiar method for constructing supports for that part of the housing which could not be supported from the ground. Besides, appellees' supports are not adjustable, and, whether they are or are not equivalent in other respects to the truss rods that appellant uses, both were well known to the construction art, and neither could bring invention to the combination.

Patent No. 1,507,439 has but a single claim, which calls for a combination of elements forming a housing or box-like structure in which there are separate compartments, the walls of which are formed of wire mesh partially covered with fabric, each having a rear door, but with a single front door which can be raised upwardly and outwardly by springs. The history of this patent shows that the claims as originally filed were rejected upon reference to several earlier patents, among them Andrew, 543,762, and Stitzer, 878,029. After these rejections, the claims were canceled and a new claim inserted; then followed a rejection and cancellation of this claim, and the presentation of another which, after amendments upon objection was allowed as the claim in suit. From this history it is evident that, if the patent is valid, it must be given a relatively narrow range. The particular form of spring support and the wire mesh partitions partially covered with fabric are the two features of the device that are said to be novel and highly useful. We think they, as well as the other elements, are but forms of construction that might be

thrown together, if occasion demanded or necessity arose, by any one who is skilled in the building art. Furthermore, appellees omit from their combination the wire partitions and the form of spring support used by appellant, and this would avoid infringement even if the patent were valid.

The decree below is affirmed.