**ADAMS et al. v. GALION IRON WORKS & MFG. CO.**

No. 5228.

Circuit Court of Appeals, Sixth Circuit.

July 2, 1930.

D. W. Cooper, of New York City (Kwis, Hudson & Kent, of Cleveland, Ohio, D. W. Cooper, of New York City, and Geo. B. Schley and Verne A. Trask, both of Indianapolis, Ind., on the brief), for appellants.

W. L. Day, of Cleveland, Ohio (Day & Day, of Cleveland, Ohio, and F. S. Stitt, of Washington, D. C., on the brief), for appellee.

Before DENISON, KNAPPEN, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Appellants brought their action for infringement of patent No. 1,133,251, issued to Roy E. Adams, March 30, 1915, for a grader. Claims 5, 6, 9, 12, 15, 20, 22, 23, 26, 31, 32, 35, and 41 are in suit. The District Court held claims 20 and 26 to be anticipated by patent to J. D. & R. E. Adams, No. 1,014,989, issued January 16, 1912, prior to application of the patent in suit. The remaining claims were held invalid on the grounds of aggregation and want of invention. (D. C.) 28 F. (2d) 225. Claim 22 may be taken as typical of all the claims in suit, including claims 20 and 26, and is printed in the margin.[1] Reissue patent No. 16,200, which was also held invalid, is not involved in the present appeal.

Road graders, consisting of an adjustable mold board carried on a frame which is supported by front and rear pairs of wheels, are extremely old and well known to every one. In the course of natural development it was found that the pressure of earth or road material upon the diagonal surface of the mold board tended to force the rear wheels to a position oblique to the line of travel. This was called side draft. Side draft was very early corrected by tilting or leaning the rear wheels, so as to resist this skidding movement. Compare patents to Adams, No. 310,165, and its reissue, No. 10,666 (1885); to Adams & Pennock, No. 370,589 (1887); to Ridings, No. 829,605 (1906); to R. E. Adams, No. 853,614 (1907); to J. D. & R. E. Adams, No. 1,014,989 (1912), and others. These patents usually covered particularly the mechanical means by which the

---

[1] "22. A grader, comprising a frame, a pair of front supporting wheels and a pair of rear supporting wheels therefor, said rear supporting wheels as a unit being shiftable and tiltable relatively to said frame, said two adjustments being obtainable independently of each other, and said front supporting wheels as a unit being tiltable relatively to said frame and a mold board carried by said frame."

wheels were tilted, for there were many ways of accomplishing such result.

Another difficulty was encountered which had to be overcome. As the pressure upon the mold board increased, the grader had a tendency to ride upon the mold board over the obstructions it was intended to move, thus lifting one of the rear wheels from the ground. This tendency was sought to be corrected by the use of much wider or longer rear axles. It was also common practice, not only to change the angularity of the mold board, but to permit it to be shifted bodily toward one side or the other. Thus the wider rear axle would not prevent the grader from being reversible, that is, working one side of the road in both directions, but occasions sometimes arose where, because of the configuration of the ground to be traveled, it was desirable that front and rear wheels on the same side-track, or travel upon the same line. J. D. and R. E. Adams accomplished this end, in patent No. 1,014,-989, by a shifting of the frame upon the front axle whereby the front and rear wheels upon one side might be brought into alignment. Others had accomplished this same result by providing axles for the rear wheels which were laterally adjustable with respect to the frame. Compare patents to Bunnell & Page, No. 567,293 (1896); to J. B. & B. O. Rhodes, No. 724,042 (1903); to Lathrop, No. 940,169 (1909); to Wold, No. 968,439 (1910), as examples.

During the process of changing the alignment of front and rear wheels, the pivoting of the front axle permitted the change of direction of the front set to reach the new relative position to the rear set. In most of the patents of the prior art the laterally adjustable or shiftable rear axle was also made angularly adjustable to the line of travel, or skewable. (Compare Bunnell & Page, No. 567,293; Rhodes, No. 724,042; and Lathrop, No. 940,169.) It may have been that this was originally thought to be necessary in order to effect, or assist in, the realignment, but the more obvious assumption is that, in these particular patents, skewability of the rear axle was employed as a means of correcting side draft.

Counsel concede, and indeed a review of the prior art compels the conclusion, that tiltable wheels to correct side draft were of ancient origin, and that shiftable rear axles to readjust the alignment of front and rear wheels were old in this particular art when the application for the patent in suit was filed. Whether we consider that the prior art did or did not depend solely upon the skewability of the shiftable rear axle to correct side draft, with its attendant disadvantages, all that Adams did in the patent in suit was to take the shiftable axle of the prior art, useful only in the prior art, or now, to secure alignment of front and rear wheels, and thus increasing reversibility in some cases, and substitute for the skewable axle, as a correction for side draft, an even older means to accomplish the same purpose. The question of aggregation aside, no invention was required to make this substitution.

It is urged that a skewable rear axle and tiltable wheels do not function mechanically in the same manner, nor operate to accomplish the result in the same way, and therefore cannot be considered mechanical equivalents; that a patent may issue for a combination notwithstanding the fact that all the elements were old, provided the combination be new; that the utility of the present combination is manifest, and was not obvious to those skilled in the art, for the shiftable, skewable rear axle and the tiltable rear wheels had been separately known and used for years, and it had occurred to no one to combine them in the same machine, or to substitute the tiltable rear wheels for the skewable axle; that the shiftable axle and tiltable wheels co-operate to produce a new grader which both permits the tracking of front and rear wheels on the same side and overcomes side draft when so operating, to a degree and in a manner unknown to the prior art; and that the total result is a grader which would do a greater amount and more kinds of work than any previously known. These contentions are all urged in answer to the defense of aggregation, except the claim that the advantages of the combination were not obvious to one skilled in the art, and that more than mechanical skill was involved. To this last position alone need we direct attention.

■ We see no patentable distinction between the laterally shiftable mold board, with the relatively shiftable front and rear axles, and tiltable wheels, of the patent to Adams, No. 1,014,989, and the shiftable rear axle and tiltable wheels of the patent in suit. Invention is not involved either in transferring shiftability from the front to the rear axle, or in the use of a shiftable rear axle, old in the art, in combination with the equally old device of tilting wheels to correct side draft. Probably the specific mechanical means of rackbar, gears, pinions, levers, etc., employed

by appellants, if new, might have been made the subject of patent for a rear axle which permitted tilting of the wheels and was also shiftable; but the selection and putting together of the most desirable parts of different machines in the same art, where each separate part is selected solely to perform the obvious purpose for which it was used in the prior art, is not invention, but rather the evolution of the mechanical ability of one skilled in that particular art. Huebner-Toledo Breweries Co. v. Mathews Gravity Carrier Co., 253 F. 445, 447 (C. C. A. 6); Excelsior Steel Furnace Co. v. Williamson Heater Co., 286 F. 131, 133 (C. C. A. 6); Thompson v. Boisselier, 114 U. S. 1, 11, 5 S. Ct. 1042, 29 L. Ed. 76; R. R. Supply Co. v. Elyria Iron & Steel Co., 244 U. S. 285, 292, 37 S. Ct. 502, 61 L. Ed. 1136. In this connection it should be remarked that none of the claims in suit is limited to the mechanical means employed in constructing the rear axle, but each claims to cover broadly any road grader having both features of shiftable axle and tiltable wheels, by or through whatever mechanisms the result may be accomplished.

Several answers are suggested to the contention of the appellants that invention is disclosed by commercial success and the fact that the elements of a shiftable rear axle and tiltable wheels were both separately known to the trade for many years before it occurred to Adams to combine them in one machine, and yet no other person conceived the idea. It may be that the mere desirability of a shiftable rear axle, which, as we have said, has a very limited necessity in use, was regarded as presenting mechanical problems, the solving of which was not considered worth while. Most users of graders purchase them for a particular type of open work in which a shiftable rear axle might be a convenience, but is not an essential, and it may be that the additional expense incident to producing such a construction was considered as negativing probability of a broad market. The commercial success of appellants' machinery, and the greatly increased use of such graders, are largely attributable to the development of cheap tractors as a motive power, supplanting horses, and to the tremendous activity in road building which came with the use of the automobile. Commercial success, and delay by others in applying their mechanical ability, are thus not as indicative of invention in this case as in many others.

Furthermore, the question of invention must be approached from the standpoint of one skilled in the particular art, not merely one of reasonable mechanical ability in other arts, and consideration must be given to the nature of the problem confronting the patentee. The applicant for a patent is presumed to know of all devices which have already been patented or the subject of prior public use. The only practical solution to correct side draft, and the one in universal use at the time of application for the patent in suit, was the tiltable wheel. The problem which confronted Adams was, therefore, given the shiftable rear axle of the prior art, assuming the desirability of using such an axle in a grader, and apart from the specific mechanical means to be employed in accomplishing the result, how could side draft best be corrected? The only conceivable answer from one skilled in the art would have been "by the use of the common and well-known tiltable wheel, if mechanical means for its use upon a shiftable axle could be devised." To the extent and breadth of the claims in suit, therefore, the patent demonstrates only mechanical ability and not invention. Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 404, 68 L. Ed. 858.

Being convinced, as we are, of the invalidity of the claims for the reasons above stated, it becomes unnecessary to pass upon the questions of aggregation or the anticipation of claims 20 and 26. The latter present no new feature, and whether they are anticipated or not becomes immaterial.

Judge Knappen participated in the hearing, consideration, and conference in this case, and was engaged in the preparation of an opinion at the time of his death. He therefore did not participate in the preparation of this opinion, although he had expressed his tentative concurrence in the result now announced.

The decree of the District Court is affirmed.