## PAQUETTE et al. v. POTTER MFG. CO.
### No. 5625.

Circuit Court of Appeals, Sixth Circuit.
Jan. 12, 1931.

O. F. Barthel, of Detroit, Mich. (Barthel, Flanders & Barthel and Ralph S. Binns, all of Detroit, Mich., on the brief), for appellants.

George R. Frye, of Detroit, Mich., for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Suit for infringement of Jacques' patent, No. 1,586,446, May 25, 1926, for a trunk. All claims were in suit and were found void of invention. The assignments of error, though varied in form, were all leveled at this holding. The specifications and drawings describe a metal trunk. The object was to provide a weather proof and dust proof trunk for use upon automobiles. Claims 1 [1]

and 5 [2] are typical. Of course, appellant did not invent a trunk. The ordinary conception of a trunk is simply a box with a hinged lid, handles, and a lock, and while such a container is useful it is not new. Appellant and its predecessors under the patent were not the first to construct metal trunks for automobiles. The Globe Machine & Stamping Company did that from 1904 to 1920. In 1923 the Martin-Maier Company was engaged in the manufacture of wooden trunks. In February of that year Jacques, president of the Jacques Manufacturing Company, called upon Paquette, president of the Martin-Maier Company, and suggested that the two companies co-operate in the manufacture and sale of metal automobile trunks; that the Jacques Company would make them and that Paquette would become sales agent. The scheme met Paquette's approval, and within a week Jacques, a mechanic, at Paquette's suggestion made two samples. He had had no previous experience in trunk making, but having been admonished by Paquette that the trunks should be both dust and rain proof, Jacques not only made them up within the week but equipped them with the devices claimed in the patent which afterwards issued. He provided the upper edges of the front and end sections of the box portion with a recess or inset wall extending from a horizontal seat portion. He turned the end and front flanges or edges of the lid inwardly and upwardly to form a U pocket extending continuously with and parallel to the edges of the lid. He provided a rectangular resilient weather strip, preferably of rubber. He inserted the blunt edge of the weather strip into the U channel or pocket and fastened it there by lateral pressure upon the channel walls. Thus the free, thin edge of the strip extended inwardly, and as the lid closed the strip contacted frictionally with the recess or inset wall of the trunk body and caused a sealing effect as the lid came to rest upon the metal seat.

But trunks and similar containers had long been made with recess walls about the top. (French patent to Lippold No. 761, 1900.) Such means for use in connection with lids or covers for closing openings of

---

[1] "1. In a trunk, a metallic main body portion having an inset wall and a lid seat, a metallic lid movably mounted with respect to the main body portion and having a metal to metal contact with the lid seat, and a flexible sealing member carried by said lid with the greater part of said member disposed parallel to the inset wall of the main body portion of said trunk, said sealing member having an offset wall to frictionally bear against said inset wall."

[2] "5. In a trunk, a main body portion comprising vertically extending front, side, and rear walls, the front and side walls being provided with a horizontal seat, additional walls vertically extending therefrom, a lid hinged to said rear wall and provided with depending peripheral flanges, the edges of which rest upon said seat, a member having its lower edge confined by the flanges of said lid, the upper edge of said member having a relatively thin projecting portion adapted to resiliently engage said additional vertical walls in forming a sealed connection therewith when said lid is closed."

trunks, chests, and boxes are common. It is also familiar practice to form U-shaped channels or pockets in metal covers by bending their periphery inwardly and upwardly. Among other illustrations, see patent No. 1,103,633 to Taliaferro and Bellamy, 1914. It is not unusual to fasten resilient weather strips or gaskets in such grooves or channels by lateral pressure upon the channel walls. Such contrivances are of common knowledge among mechanics. As an illustration, see patent to Hammer, No. 1,248,496, 1917. It is old to contact the free edges of resilient strips with mating surfaces for, sealing against the weather as well as against dust. (Patent to Bourjon, No. 1,534,498, 1925; patent to Hall, No. 734,140, 1903.) There is, of course, nothing novel in an ordinary weather strip. The device functioned as the ordinary weather strip and nothing more.

It is fair to say that the contrivance very probably has merit but the merit lies in the adjustment and location of its parts. The sealing strip was spaced sufficiently away from the closure to prevent its being injured by the trunk lid as the lid came to rest. But this was nothing more than might have been expected of a skilled mechanic. Jacques did it promptly by extending the inside arm of the U groove and the corresponding inset or recess wall. By this arrangement the sealing strip could be located away from the closure as far as was desired but the step fell far short of invention. It involved adjustability only and adjustability is not invention. Peters v. Hanson, 129 U. S. 541, 9 S. Ct. 393, 32 L. Ed. 742; Smyth Mfg. Co. v. Sheridan, 149 F. 208, 211 (C. C. A. 2).

Finally, we regard the case so free from doubt that the argument, based upon the commercial success of the product, cannot aid its weakness. Thropp's Sons. Co. v. Seiberling, 264 U. S. 320, 330, 44 S. Ct. 346, 68 L. Ed. 708.

Affirmed.