## DETROIT STOKER CO. v. BROWNELL CO.

### No. 7020.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1937.

William J. Belknap, of Detroit, Mich. (Wood & Wood, of Cincinnati, Ohio, and Laurence J. Whittemore and Clarence B. Zewadski, both of Detroit, Mich., on the brief), for appellant.

H. A. Toulmin, Jr., of Dayton, Ohio (H. A. Toulmin, of Dayton, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

Two patents for under-feed stokers were involved in the infringement suit brought by the appellant. The first was Trotter patent 1,552,968, granted September 8, 1925, and the second Beers patent 1,688,608, granted October 23, 1928. The bill was dismissed. With respect to Trotter no infringement was found, and the claims of Beers were held invalid.

The Trotter invention relates to under-feed stokers of the type in which the green fuel is fed longitudinally of a trough beneath the burning fuel and is gradually elevated into the zone of combustion. While the claims include other elements, the controversy here relates to the feeding mechanism. As in prior art, the stoker of Trotter is provided with a vertical hopper for the green fuel, disposed without the furnace and discharging into a trough shaped retort, the latter extending through the front of and into the furnace beneath the burning fuel. A ram traveling beneath the hopper pushes the coal forwardly along the retort and is adapted to be reciprocated. In its forward movement it pushes the coal ahead, gradually closing the bottom of the hopper to stop the discharge of green fuel therefrom. Upon its rearward movement the bottom of the hopper is opened and the fuel free to discharge onto the retort.

Various types of mechanism had been in use for reciprocating the ram. That adopted by Trotter is described as a crank shaft direct drive. This type employs a power driven crank shaft and a pitman rod which in its usual form has one end pivotally mounted upon a wrist pin in the ram and the other journaled upon a crank of the crank shaft. In so far as the claims of Trotter are in issue, they relate to an

improvement which Trotter claims to have made in this type of direct drive mechanism. The rear end of the conventional pitman rod was directly engaged with the crank pin so that the rod was of fixed length and stroke. With such structure no adjustment of the stroke of the ram was permitted, and the pitman rod was at all times operatively connected both to the ram and the crank shaft, so that whenever the crank shaft rotated the ram was reciprocated. It is asserted that Trotter conceived certain objectives to be highly desirable in the operation of under-feed stokers. He wished to provide for a variation in the stroke of the ram so as to control the amount of green fuel fed forward by each reciprocation, to provide for permitting the ram to remain in its foward position closing the hopper without stopping the rotation of the crank shaft, and to accomplish these things while still retaining a direct thrust between the crank shaft and the ram. Having the ram in closed position and the pitman out of operation was of advantage where a battery of stokers driven from a common drive shaft was in operation, for it permitted one or more of the rams to be cut out without affecting the operation of the others. While these objectives are not all indicated in the specification it is, of course, axiomatic that the inventor is entitled to all of the uses to which his device may be put whether understood by him at the time or not. We are, however, primarily concerned with the means disclosed by Trotter for providing variation in the stroke of the ram, for, however meritorious may be the inventor's thought in terms of result, unless the means adopted in attaining such result are novel and denote invention, either separately or in combination, he may not have a valid patent, for we are dealing with a machine and not a method. Reo Motor Car Co. v. Gear Grinding Machine Co. (C.C.A.) 42 F.(2d) 965, 968.

To secure the desired variation in the stroke of the ram, Trotter provides a sleeved block slideably mounted upon the pitman rod and having an extended bearing portion that pivotally engages the crank. The forward movement of the block is limited by a fixed stop or pin, and the rearward movement by an adjustable stop or collar. The sliding block with a fixed forward stop permits the forward movement of the ram to remain constant and the adjustable rearward stop the varying of the rearward movement. Upon the thrust of the crank shaft the block actuates the rod when it engages the forward stop and so pushes the coal along the retort. The rear travel of the block withdraws the ram from the hopper when it reaches the second stop. It follows that the second stop may be so adjusted that the block will not engage it, in which case the ram is not withdrawn but remains in closed position. The lost motion thus provided permits the crank of a battery actuating shaft to continue operating without actuating selected rams of the battery.

For the driving mechanism thus briefly described Trotter was allowed three claims —10, 11 and 12, which are in suit. Of these 12 is said to be typical and is quoted in the margin.[1] The defendant assails their validity and denies infringement.

It is urged that all that Trotter accomplished was to provide adjustability for the stroke of the ram, and that adjustability does not constitute invention. We think such arbitrary and all-embracing principle cannot be derived from the cases. It is true that mere adjustability of a part of a machine or an element in a combination entailing no exercise of the inventive faculty will not rise to the dignity of invention, even though the adjustable feature be new. The cases supporting the principle invoked we think do not go beyond this. Ford Motor Co. v. Ohio Stamping Co., 56 F.(2d) 807 (C.C.A.6); Smith v. Magic City Kennel Club, Inc., 282 U.S. 784, 792, 51 S.Ct. 291, 294, 75 L.Ed. 707; Smith v. Springdale Amusement Park, 40 F.(2d) 173 (C.C.A.6); Peters v. Hanson, 129 U.S. 541, 9 S.Ct. 393, 32 L.Ed. 742; Directoplate Corporation v. Donaldson Lithographing Co., 51 F.(2d) 199 (C.C.A.6); Paquette et al. v. Potter Mfg. Co., 46 F.(2d) 271 (C.C.A.6). Undoubtedly there are patents wherein provisions for adjustability are not only novel but disclose the highest type of inventive

---

[1] In a stoker, the combination with a retort, and a ram for moving fuel longitudinally of said retort, of means for reciprocating the ram including a rotary crank shaft at one end of the retort, a pitman rod secured directly to said ram, a direct drive connection between said shaft and pitman rod including a block slidably receiving the pitman rod and rotatably receiving a crank of said shaft, and adjustable means for limiting the sliding movement of the block on said pitman rod.

thought, and solve problems long defying workers in the art.

The question to be determined is whether the inventor in seeking to provide variation for the stroke of the ram was confronted with any difficulty not within the reach of a skilled worker in the art. It would seem to us from general observation and specific illustration that a slidable connection between elements within an adjustable range is a rather obvious mechanical expedient in many arts for securing either variation in the drive of an operative element or achieving an inoperative zone through which the actuating means idles and produces nothing but lost motion, and this without respect to whether one element slides upon the other as a sleeved block upon a pitman rod, or whether the first element slides in a groove or channel of the second, or whether the sliding element is in the same plane as the other or in one parallel thereto. Compare Lees-Bradner Co. v. National Tool Co., 52 F. (2d) 782 (C.C.A.6). While the Delaney and McCanna patent, No.. 659,166, for a lubricator, is in a wholly nonanalogous art, and not perhaps a source of inspiration to inventors of stokers, yet illustrations of sliding connections operative only when fixed or adjustable stops are reached in relation to other elements, suggest themselves at once out of the store of daily experience and observation such as the extension table, the extensible fire ladder, the collapsible telescope, and other familiar devices.

■ But, aside from the pertinency of such common mechanical expedients, the stoker art itself is sufficiently illuminating in respect to slidable connections between crank shaft and pitman rod and adjustable stops to vary the stroke of the rod in Roney, No. 409,650, Taylor, British patent 28,475, and Edgar, 742,975, to reduce the inventor's improvement to rather narrow advance upon prior art. It is true that such sliding connection through determined or determinable range is not usually disclosed in combination with direct thrust of the pitman, but no problem seems to have been involved, at least none is suggested, in the combination of the sliding connection with the direct drive. No invention is involved in applying driving power at one end of a chain of elements instead of at another. Lees-Bradner Co. v. National Tool Co., supra. Indeed, in the Taylor British patent 28,475, which operates by direct thrust of the crank shaft, there is not only a sliding connection in respect to the second pitman variable by an adjustable stop, but also a zone of nonoperative or lost motion between the stops. Taylor is, of course, the reverse of Trotter, and the forward stop being adjustable while the rearward stop is fixed, the ram may be permitted to remain only in its open position rather than closed as in Trotter. But there can be no invention in reversing the adjustability of the stops of Taylor so as to provide an inoperative zone when the ram has been moved forward. As we have said before, Adams v. Galion Iron Works & Mfg. Co., 42 F.(2d) 395, 397, "The question of invention must be approached from the standpoint of one skilled in the particular art, not merely one of reasonable mechanical ability in other arts, and consideration must be given to the nature of the problem confronting the patentee. The applicant for a patent is presumed to know of all devices which have already been patented or the subject of prior public use." We conclude that Trotter disclosed but expected mechanical skill in adapting for his purpose adjustable elements disclosed by the art, and that this is not invention. We hold claims 10, 11, and 12 of Trotter invalid for want of invention over the prior art, and no consideration need therefore be given to the question of infringement.

■ Of the Beers patent little need be said. It had been the practice generally in the manufacture of stokers to locate the blower fan at the side or rear of the stoker and remote from the fuel feeding mechanism at the front of the furnace and to drive both fan and fuel feeding mechanism from a suitably disposed power unit. This necessitated the employment of extended belts and shafts and took up considerable space. In fact, in some instances the blower fan was operated by separate motors. The object of the Beers invention was to provide a compact and unified mechanism wherein the power unit such as an electric motor drove both the stoker and the blower fan, the fan being arranged at the front of the stoker adjacent to and closely associated with the motor and the fuel feeding mechanism. With such arrangement Beers thought it possible to mount the motor and fan either separately or as a unit upon or adjacent to the front of the stoker and to connect the shaft of the motor by means of a short belt or chain to the stoker mechanism.

Whatever ingenuity Beers may have manifested in more compactly assembling the several elements of his combination, the stoker still operated as a stoker, the blower fan as a blower. Bringing them together in no wise altered the separate result of each or their respective contributions to any unitary result that was achieved. The claims clearly call for an aggregation (Grinnell Washing Machine Co. v. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196), and are invalid.

Decree below is affirmed.