518

No. 7795.

Circuit Court of Appeals, Sixth Circuit.

April 13, 1939.

A. J. Hudson, of Cleveland, Ohio (Kwis, Hudson & Kent, of Cleveland, Ohio, on the brief), for appellant.

Albert R. Teare, of Cleveland, Ohio (Bates, Golrick & Teare, Albert H. Bates, and Albert R. Teare, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a decree rendered in an infringement suit, holding invalid all six claims of Raible Patent No. 1,945,358, issued January 30, 1934, and assigned to appellant. The defenses interposed were invalidity and lack of infringement.

Claims 1 through 4 are for a method, and Claims 5 and 6 are article claims.[1]

The patent relates to chaplets such as are used in metal foundries to hold the sand core in position in a mold. The practice in making chaplets is to provide two sets of nicks in the stem, knitting nicks and break-off nicks. The knitting nicks are intended to prevent the end of the chaplet stem embedded in the casting from pulling out and leaving a hole in the casting. The purpose of the break-off nick is to render the chaplet frangible at the point where it protrudes from the casting so that it may be easily broken off when the casting is cold. Break-off nicks are old in the art but appellant claims that peculiar efficiency is secured from the Raible process of making the break-off nick. Under the patent in suit the stem which supports the core is nicked at the place where it is flush with the surface of the metal casting when poured. The nicks, which are in the same transverse plane on the stem and diametrically opposite each other, are made by pressure exerted through dies. It is claimed that in the Raible process the narrowed portion of the stem resulting from the nicking is rendered brittle by stressing the material of the stem between the nicks beyond its elastic limit. Appellant asserts that this embrittlement is shown by photomicrographs which disclose the crystalline fragmentation testified to be produced by the swaging action of the dies. It is urged that this method of nicking preserves the strength of the chaplet so that it firmly positions the core in molding, is not easily breakable when transported in commerce, and at the same time achieves sufficient frangibility so that the chaplets are readily brushed off after the casting operation.

The nicking of chaplet stems is old in the art. Patent to Needham (1893), No. 506,717, is for a machine to make chaplets having nicks in the stem. The nicks were made by dies under pressure, but the patent

[1] Typical of the method claims is Claim 1, which reads:

"The method of making chaplets having a head and stem portion, which comprises producing a portion of reduced transverse area on the stem which is rendered brittle due to the fact that the material adjacent the reduced portion has been stressed beyond its elastic limit."

Claim 5, which is typical of the article claims, reads:

"A chaplet comprising a head and a metal stem connected thereto, said stem having a break-off portion of reduced cross-sectional area the metal of which has been stressed beyond its elastic limit to render the same more frangible."

does not reveal whether they were knitting nicks or break-off nicks. The Needham patent does not claim that embrittlement of the break-off nicks resulted.

Patent to Vollmer (1907), No. 863,816, is for a chaplet having a break-off nick, but it does not specify that the nick was to be made by pressure. The nick described was "an annular channel," which indicates that it was to be cut or rolled in the wire stem rather than pressed. However, the specifications provide that "any method whereby the chaplet is rendered frangible at a point which will be at the surface of the casting comes within the scope of the invention." The record shows that machines developed by the American Radiator Company, of Buffalo, New York, as early as 1909, made chaplets having both sets of nicks, and that various methods of producing the nicks were used, including pressure by dies. In 1912, the Baird Machine Company, of Stratford, Connecticut, made chaplet machines which produced chaplets having two sets of nicks made by die pressure. The transverse nicks were on four sides of the stem and at right angles to each other. In 1925, the Pratt Chuck Company, of Frankfort, New York, made chaplets having two sets of nicks pressed in the stem.

Appellant claims that novelty exists in the Raible process and device because the pressed dies stress the material beyond its elastic strength, creating a partial fracture of the stem which makes the chaplet more frangible or brittle and easily removable from the cold casting. It urges that this same result cannot be attained by having the nicks cut, filed or rolled into the stem because then the narrowed part of the stem has not been fractured or strained in any way. However, the claimed advantage is discounted by the fact that during the casting process the stem, being embedded in the molten metal, becomes annealed so that the brittleness is destroyed. When metal is annealed it becomes ductile and has a minimum of brittleness, and appellant's expert witness, Boyleston, in effect admits that the heat of casting anneals the break-off nick. Upon being shown a photomicrograph of the used chaplet, nicked under pressure, he testified that the structure of the exhibit in the photomicrograph indicated to him "that the metal had been at least partially annealed after cold working." He added, "I do not see any crystalline fragmentation

by cold working." Thus the only claimed advance on the prior art is found lacking at the time when brittleness would be desirable.

We regard all claims of the patent in suit as invalid in view of the prior art. The applicant for a patent is presumed to know of all devices which have already been patented or the subject of prior public use. Adams v. Galion Iron Works & Mfg. Co., 6 Cir., 42 F.2d 395, 397; Detroit Stoker Co. v. Brownell Co., 6 Cir., 89 F.2d 422, 424. Also the patent does not accomplish the result which it claims. Whether it is too vague in its terms, as appellee asserts, in that it does not sufficiently disclose how to make a chaplet with the desired characteristics, we do not need to decide.

The decree is affirmed.