**WESTINGHOUSE AIR BRAKE CO. et al. v. SCHWARZE ELECTRIC CO.**

**SCHWARZE ELECTRIC CO. v. WESTING-HOUSE AIR BRAKE CO. et al.**

**No. 7888, 7889.**

Circuit Court of Appeals, Sixth Circuit.

Nov. 9, 1939.

David S. Kane, of New York City (Whittemore, Hulbert & Belknap, of Detroit, Mich., Holland Duell and David S. Kane, both of New York City, and Arthur C. Beaumont, of Detroit, Mich., on the brief), for Westinghouse Air Brake Co. et al.

George E. Kirk, of Toledo, Ohio, for Schwarze Electric Co.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

The Westinghouse Air Brake Company, assignee, and E. A. Laboratories, Inc., licensee, sued Schwarze Electric Company for infringement of the five claims of reissue Patent No. 18,682, December 6, 1932, to McCune and Johnson. Schwarze brought a cross-action for infringement of Claims 1, 2, 3, 4, 5, 6 and 8 of Patent No. 2,039,694, May 5, 1936, to Von Voightlander; and for infringement of Claims 4 and 11 of Patent No. 1,888,684, August 5, 1931, to Middleton.

The District Court dismissed the bill and the counterclaim, holding all three patents void for lack of invention as to the claims in suit. Plaintiffs appealed but they here stress Claims 1, 4 and 5 only of the McCune reissue. Only the Von Voightlander patent is before us on defendants' cross-appeal. Each patent is for a vacuum-actuated diaphragm horn, designed primarily for use on motor vehicles, having internal combustion engines.

### McCune.

The device disclosed by this patent consists of two saucer-shaped casing sections, adapted to be bolted together along their rims, with an annular recess inside the rim of one to receive a disc-shaped, metal diaphragm which is clamped between them to form two chambers. Looking from the side, the left chamber is open to the atmosphere through a small port in the left casing member and the right chamber is connected with the vacuum supply and by a valve-closed opening with the horn and outer air.

This central diaphragm is pierced along its edges to receive the clamping bolts and again at its center to receive a valve stem which is secured to it on its left face by a washer-shaped counterweight and a lock-nut. On the right of the diaphragm the valve stem passes through the vacuum chamber and through an opening at the center of the right casing member. This opening has an annular seat rib around it. Integral with the valve stem on its right end and secured to it by a headed screw, is a thin, metal disk valve, adapted to seat against the annular rib, to close the central opening in the right casing member. To the right of the disk valve, and attached to the collar surrounding the opening, is the horn shaped member.

At rest, the central diaphragm is unflexed, its opposite chambers being at atmospheric pressure. In this situation, the disk valve connected with the diaphragm "may just touch the seat rib * * * or may even be slightly away from the seat rib".

In operation, a valve is opened in the pipe leading to the vacuum supply, namely, the intake manifold; a partial vacuum is created in the right hand chamber, causing the thin, flexible disk valve tightly to engage the seat rib by the action of the atmospheric pressure on its right face. At the same time the atmospheric pressure in the left hand chamber moves the diaphragm to the right against the reduced pressure on its right. The valve stem, being integral with the diaphragm, also moves to the right against the disk valve, which being flexible, clings to the valve seat for a moment before snapping open from the preponderant pressure on the larger central diaphragm. Once the disk valve parts from its seat, air at atmospheric pressure rushes in through the port, equalizing the pressure on each side of the diaphragm, causing it and the disk valve to return to normal position. The vacuum becomes effective again, and the sequence is repeated. The frequency of the repetition is such that the central diaphragm is caused to vibrate and the consequent vibration of the disk valve causes the air column in the horn to pulsate and produce sound.

Claim 1, typical of three involved, is printed in the margin.[1]

The device is a relatively simple one. Shaw No. 212,157, February 11, 1879, has a striking physical resemblance to McCune and certain similarities in operation. Shaw was not vacuum operated. It was activated by steam pressure. Its valve was not a flat disk operating on an annular ring but a piston and cylinder. The horn was not fitted to the casing on the side next to the closure valve, but on the opposite side of the central diaphragm. However, the main features were present; a thin, metallic central diaphragm, actuated by an artificially induced inequality of pressure on one side, with a plunger (or valve stem) fastened firmly to the diaphragm and terminating in a valve.

The central diaphragm in each is motivated by pressure, whether of steam, as in Shaw, or of the atmosphere acting against a partial vacuum, as in McCune. The principle of operation, that is, the variation in the pressure on opposite sides of the diaphragm, is identical.

Garrett, Patent No. 1,434,655, November 7, 1922, is a sounding device designed especially for internal combustion engines and operating by means of suction from the manifold. The central diaphragm was utilized in the moving portion of the valve through the provision of an opening at its center around which was a flange or ring adapted to seat against a stationary disk.

The Garrett specifications read: "This flange acts as the movable part of a valve seat in connection with the production of sound and also *serves to some extent as a hammer in connection with the balance of the valve* and the disk". (Italics ours).

In view of the claim in the testimony for the sound-producing quality of the thin, flexible disk of McCune, we note that Garrett's pressure valve seat was a "thin copper washer", of which he said, *"the nature of the vibration will also be materially affected by the resiliency or flexibility of the copper washer. * * *"* (Italics ours.)

Again he said, that the suction inlet and valve openings were such that the central flange would "fly back with great force against its seat (the copper washer)".

[1] "1. A sound producer comprising a flexible diaphragm having a chamber at one side constantly open to the atmosphere and having a chamber at the opposite side, a partial vacuum source, manually operated means for connecting said source to said chamber at the opposite side, a horn, and a thin flexible valve operated by said diaphragm for controlling communication from said horn to said vacuum chamber".

354

Again: "I am confident that the result of the hammering of the valve ring or flange at the center of the disk on the valve head, or copper washer, does produce some sound in the disk, independent of the sound resulting from the rapid interruptions in the air current. * * *"

Little was said in Garrett touching the location of the horn, although in his Figure 2 it appears to be mounted, as in McCune, on the valve closure side of the diaphragm. Garrett was like McCune in that his device was vacuum operated. He produced a hammering effect by the contact of flexible disk with annular ring. So did McCune. In McCune, the disk moved; in Garrett, the ring.

 Our question is, whether in view of Shaw and Garrett, McCune is invention. The precise combination and interworking of mechanical and pneumatic elements in McCune are not found in Shaw and Garrett, nor in the Galbarini or Constantinesco patents considered by the District Court, but McCune simply rearranged or readjusted old elements, or used their equivalents, to make a new structure in which each part operated substantially as in the old and with the same result, i. e., the production of sound. This may have required "the exercise of a high degree of mechanical skill" but the result was not invention. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 292, 37 S.Ct. 502, 61 L.Ed. 1136; Excelsior Steel Furnace Co. v. Williamson Heater Co., 6 Cir., 286 F. 131; Adams v. Galion Iron Works & Mfg. Co., 6 Cir., 42 F.2d 395, 397. All that McCune did was suggested by the prior art.

### Von Voightlander.

This patent was for an improvement in vacuum-actuated diaphragm horns so as to render them effective during extremely hot and cold weather. It had been found that there was binding, buckling and distortion of the central diaphragm at the extremes of temperature, which impaired the effectiveness of the horn. The improvement was designed to eliminate this binding and distortion by providing sufficient play in the seating of the diaphragm to allow some slight movement thereof through all temperature ranges, along with effective packing of the edges to prevent undue leakage during operation. The patent called for the usual two part casing with an inwardly opening channel seat between them to receive the central diaphragm. The seat was U-shaped in cross-section with a diameter slightly larger than that of the diaphragm. The diaphragm was provided with peripheral notches for clearance of the bolts fastening the two casing sections. In the old devices the diaphragm was pierced for the reception of the bolts. In Von Voightlander the bolts fitted the notches and served to anchor the diaphragm against rotation. In the specification it is said: "There is such normal clearance not only at these notches but in peripheral region that there may be some expansion and contraction as well as eccentric shifting of the diaphragm in the snug slip fit in the seat". This means that the seat was enlarged slightly with reference to the diaphragm, the latter was trimmed around its edges so that the holes, which formerly accommodated the bolts and held the diaphragm immovable, became notches, allowing a slight but apparently adequate, radial movement of the diaphragm. To us this was a fitting or adjustment operation only, and adjustability is not invention. Peters v. Hanson, 129 U.S. 541, 550, 9 S.Ct. 393, 32 L.Ed. 742; Paquette v. Potter Mfg. Co., 6 Cir., 46 F.2d 271.

The decree of the District Court is affirmed.