## JOHN T. RIDDELL, Inc., v. ATHLETIC SHOE CO.
### No. 5243.

Circuit Court of Appeals, Seventh Circuit. Dec. 15, 1934.

Rehearing Denied Feb. 26, 1935.

William R. Rummler and Fred M. Davis, both of Chicago, Ill. (Robert C. McManus, of Chicago, Ill., of counsel), for appellant.

Cyril A. Soans and Frank H. Marks, both of Chicago, Ill., for appellee.

Before SPARKS and FITZHENRY, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Appellee was charged by appellant with infringement of two combination patents issued to John T. Riddell, No. 1,462,625, hereinafter referred to as the "clamp" patent, issued July 24, 1923, for an "athletic shoe"; and No. 1,659,666, hereinafter referred to as the "plate" patent, issued February 21, 1928, for "Athletic-Shoe Construction." The defense was invalidity and noninfringement. The court found both patents invalid and dismissed the bill for want of equity, and from that decree this appeal is prosecuted.

The clamp patent relates to a football shoe having molded conical cleats, preferably of hard rubber, detachably secured to the sole of a shoe by means of a stud, which may be an ordinary large headed screw extending through the sole of a shoe and having its head bearing against the upper portion of the sole. This stud or screw is clamped to the sole by an ordinary hexagonal nut, threadedly engaging the screw and bearing against the lower or outer face of the sole. The cleat has a similar nut molded in it and threaded onto the same stud, whereby it may be screwed on or off at will or interchanged with a cleat of different size or shape. Claims 1 and 2 of this patent[1] are here involved.

The court held that this patent was anticipated by the following United States patents: Hart, No. 1,025,087, of April 30, 1912; Marsh, No. 588,158, of August 17, 1897; Schwarzer, No. 1,391,346, of September 20, 1921; and British patent to Hickson, No. 25,446, of 1898. We think there was no error in this ruling. It is obvious from the prior art patents just referred to, and many others cited, that all of the features of the clamp patent were old in the art, and unless it has been shown that appellant by combination of the old elements of this patent has produced a new and useful result, or accomplished an old result in a more facile or economical way, the patent can not stand. We think that neither of these results has been shown. Appellant's main contention in this respect is that by use of the lock nut, the metallic washer is held in place against the bottom of the sole, and by that arrangement the stud is securely and permanently held in place, and the sole of the shoe is constantly bound and clamped together and reinforced by the studs, even while the cleats are being removed and replaced. This result seems to have been accomplished by both Hart and Marsh. It is true that in Hart the studs project but little if any below the lower faces of the washers which are securely threaded upon the studs, forming a permanent clamp, and the threaded shank of the cleat engages the threaded center of the stud; while in the patent in suit the stud, extending through the sole, contains the male thread which engages the thread of the cleat. In Marsh the studs are threaded as in Riddell, engaging the threads of the lock nuts and extending below them, thus forming the cleats. Schwarzer shows a threaded stud molded in precisely the same kind of a conical cleat as disclosed by Riddell, and so does the Williams British patent, No. 27,784, issued in 1904. Both Shell, No. 1,054,245, issued in 1913, and Vaughan, No. 1,088,115, issued in 1914, disclose the molding of nuts in rubber tread members; and Fouet French patent No. 355,316, published in 1905, discloses a securing nut embedded in a cavity in a leather heel. British patents, Hickson No. 25,446 of 1898, and Mussabini and Ransom, No. 10,869 of 1906, both disclose interchangeable cleats and spikes with the same attaching devices. We think there is no invention in substituting for the Hart metal cleat a molded cleat as disclosed by Schwarzer or by Hickson, or in applying the clamping nut of Hart or Marsh to the threaded bolt of Hickson. Such seems to be the disclosure of Riddell and we think it amounts to nothing more than mechanical skill.

---

[1] "1. The combination with a shoe, of a stud passing through and clamped to the sole of said shoe and projecting therefrom; a tread member; and a securing member enclosed and imbedded in said tread member and engaging said stud, substantially as described.

"2. The combination with a shoe of a threaded stud passing through and clamped to the sole of said shoe and projecting therefrom; a tread member; and a nut enclosed and imbedded in said tread member and detachably engaging said stud, substantially as described."

The plate patent is said to be an improvement over the clamp patent. They are substantially alike except that in the plate patent a plate of spring metal is interposed in the sole of the shoe between the plies of leather, and the anchoring stud extends entirely through the sole and plate. A similar plate is likewise used in the heel. This patent has but one claim.[2] The court held that this patent was anticipated by British patent to Hickson, No. 25,446 of 1898, and by the following United States patents: Golden, No. 938,843, of November 2, 1909; Golden, No. 1,493,856, of May 13, 1924; and Perry, No. 1,548,806, of August 4, 1925.

The dominant feature of the plate patent is the resilient steel plate introduced into the sole, so that whenever it is sprung out of place it will return to its standard form. The patent list above referred to discloses that this feature was old in the art. The original specification of this patent admitted that metal plates had been used within the soles of both athletic and ordinary shoes, and that spring metal plates had been used in the instep and tread portion of non-athletic shoes to add resilience in walking. It is obvious that Golden, No. 1,493,856, disclosed and used a spring steel plate in a cleated shoe, and at the trial Riddell admitted that the steel used by Golden had the same properties as to temper, bending and resilience, and was the same kind that he, Riddell, had used since 1925. The original claims of this patent were rejected on Golden, No. 1,493,856 and other patents cited by the Examiner. It is to be noted that the original specifications of this patent stated that "the bolts * * * effectively engage the plates * * * and are not at liberty * * * to move laterally relative to the plates, or to have any other displacement movement without a proportional dislocation of engaged parts of the plate. * * * The cleats are, therefore, effectively and rigidly held in place. * * *" Upon rejection of the original claims, cancelations and amendments were made and other claims were added which eventually resulted in the allowance of the one claim which is now in suit. The added feature by which Riddell was permitted to prevail over the prior art cited was the specification that his studs had a snug sliding fit within the openings in the plates adapted to yield vertically with respect thereto, thus permitting sidewise flexing of the cleats in such manner as to prevent permanent distortion thereof. It will be noted that this specification is in direct opposition to the original specifications from which we have quoted. The record discloses, however, that there was substantial evidence introduced in support of the fact that appellant was unable to produce a satisfactory commercial article by following the present claim and specification in this respect, but was forced to abandon it and to resort to the construction set forth in the original claims and specifications. This evidence is quite persuasive and no doubt caused the court to hold that there was neither a new and useful result produced by the combination, nor an old result produced in a more economical manner. This claim and claim 1 of the clamp patent were held invalid by the District Court of the Southern District of Ohio. See Riddell v. Goldsmith Sons Co., 22 Patent Law Quarterly, 252.

[2] Appellant urges that the commercial success of the patent should sustain it. That is sufficient only when there is doubt present as to its validity. Commercial success is not available both to create the doubt and dissolve it. Furthermore, the court found that the commercial success was due to facts other than the disclosure of the patent, and we think the finding was warranted.

Decree affirmed.

### On Petition for Rehearing.

There are three reasons assigned in appellant's petition for a rehearing which we wish to especially notice, because of the urgency of the petition.

Counsel stresses the fact that he did not have sufficient time in which to argue his case before this court. He was allotted and used the full time permitted under the rules of this court, and we think it was ample for the purpose of presenting every issue raised. Furthermore, the issues were fully presented by

[2] "What is claimed is:

"In athletic shoe construction, in combination a shoe sole; a flexible metallic spring plate assembled within said sole; relatively widely spaced self-cleaning cleats outstanding from said sole; anchoring studs extending through said plate and adapted to yield vertically with respect thereto; said cleats secured to said studs; the upper end of said studs imbedded within said sole, above said plate, for anchoring said cleats to said sole and to said plate; said plate bridging the space between said cleats and adapted to yield for permitting sideways flexing of said cleats and to prevent permanent distortion thereof."

excellent briefs by the counsel of both parties.

It is next contended that the court in describing the patent failed to mention the washer interposed between the nut and the sole of the shoe. That is true, but the claims in issue make no mention of a washer. However, the metallic washer alluded to, and its use, is specifically mentioned and discussed later in the opinion.

Further complaint is made of the court's statement that there was substantial evidence in support of the fact that appellant was unable to produce a satisfactory commercial article by following the claim of the plate patent, and was forced to abandon it and resort to the construction set forth in the original claims and specifications. That statement did not purport to be a quotation from the testimony of any witness, but we think it is logically inferable from the evidence adduced.

Other reasons urged were formerly presented and fully considered, and we think they are without merit.

The petition for rehearing is denied.