## JOHN T. RIDDELL, Inc., v. P. GOLDSMITH SONS CO.

### No. 7269.

Circuit Court of Appeals, Sixth Circuit.

Oct. 8, 1937.

William Rummler, of Chicago, Ill. (Fred M. Davis, of Chicago, Ill., on the brief), for appellant.

Marston Allen, of Cincinnati, Ohio (Allen & Allen and Theodore Greve, all of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Suit by John T. Riddell, Inc., against the P. Goldsmith Sons Company for infringement of claim 1 of patent No. 1,462,-625, issued July 24, 1923, claims 1, 4, and 5 of patent No. 1,642,827, issued September 20, 1927, and the single claim of patent No. 1,659,666, issued February 21, 1928, all of which patents were issued to John T. Riddell and assigned to appellant. The patents related particularly to football shoes. The court found all claims invalid for lack of invention.

The patents were designed to provide an improved cleat for football shoes. Early cleats had been built up of layers of leather in pyramid form, slightly elongated. Shoe nails, driven through, secured them to the sole. Appellant's cleats were truncated cones molded of rubber or composition material. Imbedded therein were threaded nuts which could be attached to threaded studs projecting from the sole. Sometimes the fittings were reversed, the sockets being fixed in the sole and the stud in the cleat. Detachable cleats had advantages over leather ones in that they could easily be replaced when worn, or changed to conform to varying weather conditions.

*Patent No. 1,462,625.* In the disclosure (first Riddell) a flatheaded stud was countersunk in the inner sole flush with its surface, its threaded end projected through the sole. A metal washer was passed over the stud and secured in place

354

against the sole by a lock nut screwed on to the stud. Thus the sole was clamped between the head of the stud and the lock nut bearing on the washer, and the stud was rigidly held in place. The tread member or molded cone had a lock nut imbedded in it which screwed on to the stud. The cone was recessed at its base to enclose the upper lock nut and was screwed fast against the washer. When a number of these tread members relatively spaced were attached to the sole and heel, the back thrust therefrom would be distributed and the danger of injury to the wearer of the shoe would be lessened.

Claim 1 is printed.[1]

*Patent No. 1,642,827.* In the form described in this patent (second Riddell) flatheaded studs spaced apart were countersunk in the sole to seat flush with its surface. They were threaded externally to engage internally threaded socket members which fitted into recesses in the lower portion of the sole, each socket member being provided at its lower end with a stop flange fitting against a washer resting against the bottom of the sole. When screwed tightly together, the head of each stud pressed against the inner sole and the corresponding flange of the socket against the washer and the outer surface of the sole, thus rigidly securing the assembly to the shoe. The cone or tread member differed from the one used in the first patent in that in place of the imbedded lock nut there was substituted a headed bolt whose threaded shank screwed into the unused portion of the internally threaded socket member. A recess in the tread member inclosed the flange portion of the socket as it did the upper lock nut in the first patent.

Claim 4, particularly stressed by appellant, is printed.[2]

*Patent No. 1,659,666.* The assembly in this patent (third Riddell) was practically the same as in the first, except for the interposition of plates of spring metal between layers of leather in the sole and heel. The heel plate was heel-shaped but smaller in area and was pierced in two places to permit passage of the stud in the tread assembly. The other plate was shaped like a half sole, but smaller, and was pierced at five places for passage of the studs. These holes were distributed near the edge of the plate, one in the center at the front and two each on the side, so spaced that each tread member was about a quarter to a half inch from the edge of the sole and about an inch from the edge of the others. In the specifications it was said each aperture in the spring plate was "preferably proportioned to snugly accommodate the passage of the bolt," or stud, thus "the bolts * * * effectively engage the plates * * * and are not at liberty * * * to move laterally, or to have any other displacement movement without a proportional displacement of engaged parts of the plate."

It was further said that the tread members being widely spaced were self cleaning, and for the resiliency of the construction that "the average or ordinary shoe sole of entire leather construction buckles, bends or breaks between cleats or otherwise gives and allows the cleats to assume relatively distorted positions, especially after such soles became saturated with moisture. * * * A plate of soft iron or soft steel, even when effectively anchored directly to the cleats, is liable to be permanently bent out of proper position, and a rigid metal plate similarly anchored is liable to break under the stress of two cleats moving relative to each other, so that such plates will not serve to effectively avoid the danger to or deterioration of the sole. * * *" It was claimed a plate of spring steel would limit deflection of the cleats when under stress and restore them to normal position as the stress was relieved.

---

[1] "1. The combination with a shoe, of a stud passing through and clamped to the sole of said shoe and projecting therefrom; a tread member; and a securing member enclosed and imbedded in said tread member and engaging said stud, substantially as described."

[2] "4. The combination with a shoe, of a washer engaging the bottom of the sole thereof; cooperating means consisting of screw thread engaging clamping means; a head provided on the upper end of one of said members for clamping down on said sole, and the other member adapted to engage said washer, for clamping said washer in engagement with said sole; one of said clamping members being provided with an internally threaded socket; a tread member having a headed stud imbedded therein and projecting therefrom, to engage threads in said socket; said tread member being recessed for receiving one of said cooperating means therein and adapted to engage said washer."

The single claim is printed.[3]

*The Prior Art.* In 1895 Dunkley, English patent No. 13,041, produced a rudimentary cleat assembly, by placing through an outer sole a screw socket which might be fixed to the inside of the sole by a spiked flange, the spikes being driven into and clinched in the sole. Above this outer sole and sockets was "a protecting layer of suitable material such as steel or vulcanite" and over this a piece of cloth or felt, and then the inner sole. For football shoes leather studs fitted with a screw were screwed into the socket and fastened by riveting, soldering, or a pin nut washer.

Marsh, letters patent No. 588,158— 1897, used screws countersunk in the inside sole of a shoe with nuts to engage their projecting outer ends "to prevent slipping over iced or slippery surfaces."

Hickson, British Patent No. 25,466— 1899, used square headed screws, projecting a half inch beyond the sole, upon which could be screwed specially prepared leather or composition cleats securing the whole firmly together. Hickson also used steel plates in the sole and heel through holes in which the bolts were passed. The plates were not shaped like the sole or heel, that in the sole being skeletonal with four arms near the ends of which were the holes for the bolts, that in the heel being oval shaped with the long axis across the heel with a hole near either end. The arrangement was much as in Riddell, except the front cleat was omitted and the two forward ones were advanced somewhat toward the fore part of the sole. The plate performed a double function. In its first, it allowed the sole a certain amount of flexibility and a sufficient amount of rigidity. In its second, it maintained the studs or projections in their operative position.

Golden, U. S. patent No. 938,843— 1909, used a thin, flexible, pressure-supporting plate, preferably of sheet steel to prevent the inner sole from bulging of cleat pressure. For football shoes, it was notched at the edges and pierced in the middle to receive the nails securing the leather cleats, the shoulders of which overlapped the plate. For baseball cleats, the plate was pierced in three places to receive the fastening member.

Hart, U. S. patent No. 1,025,087— 1912, used a pendent lug, sunk into the inner sole. It was threaded interiorly and exteriorly. A washer fitting flatly against the sole was threaded onto it and a calk threaded into it. Hart also provided a carrier or support shown to consist "of a relatively thin, and therefore somewhat flexible plate. * * * These plates are usually arranged in the boot or shoe at a desired place over the heel and sole respectively, and they may, if desired, be covered by the lining of the shoe, although this is not a material matter. Each carrier or plate is provided on its outer side with several rigid projections or lugs which may be formed in any desirable way and although these projections or lugs in the construction shown are the lower portions of studs or rivets as will hereinafter appear, this is not important as there may be instances where I should prefer to make the lugs or projections integral with the plate. * * *" In the drawings, the plates were shaped and placed in rough conformity to the sole and heels.

Schwarzer, patent No. 1,391,346—1921, used the conical cleats circular in cross-section. They were held in place with "their larger ends against the underside of the sole by screws passing centrally through the cleats and engaged in threaded openings of thin metal plates secured to the upper sole in such a way as to preserve the resiliency and flexibility of the sole, and also to distribute the cleats" over the face of the shoe, so they will be self-cleaning. There were five T-shaped plates for the sole, each fastened by three rivets to the upper face of the main sole. Pendent hollow lugs, threaded interiorly, passed through apertures in the outer sole layers for receipt of the studs. A single plate fashioned somewhat like a four leaf clover fastened to the heel portion of the sole and had two depending lugs. An alterna-

---

[3] "In athletic shoe construction, in combination a shoe sole; a flexible metallic spring plate assembled within said sole; relatively widely spaced self-cleaning cleats outstanding from said sole; anchoring studs extending through said plate and adapted to yield vertically with respect thereto; said cleats secured to said studs; the upper end of said studs imbedded within said sole, above said plate, for anchoring said cleats to said sole and to said plate; said plate bridging the space between said cleats and adapted to yield for permitting sideways flexing of said cleats and to prevent permanent distortion thereof."

tive cleat had an imbedded screw in place of the one passing completely through it.

There were other examples of the prior art in evidence but we regard those cited herein as sufficient.

We fail to find the inventive concept in any claim in issue.

Relative to claim 1 of patent No. 1,-462,625, Marsh had the stud passing through and projecting from the sole. Hart used a washer for clamping the stud to the shoe. It is immaterial that Hart's washer was rounded on the lower side for it was flat on the upper side where it bore upon the sole as in Riddell.

It is also true that Hart's washer was its own lock nut; but there is nothing new in combining a washer and a lock nut in a single piece instead of two.

Schwarzer used the frustro-conical cleat, clearly like Riddell; and in one embodiment used a stud imbedded therein. The prior art discloses no instance of a nut imbedded in the cleat, but, given the projected stud and the Schwarzer disclosure, it was an obvious expedient.

■■ Riddell was chargeable with knowledge of the prior art. Adams v. Galion Iron Works & Mfg. Co., 42 F.(2d) 395, 397 (C.C.A. 6). The most that can be said for the claim is that, being skilled in an art continually undergoing refinement, he probably produced a better football shoe, but the improvement, if any, was in degree only and was not invention. See Loeber Hair Goods Co. v. H. W. Gossard Co., 87 F.(2d) 98, 100 (C.C.A. 6); Condit v. Jackson Corset Co., 35 F.(2d) 4, 6 (C.C.A. 6); John T. Riddell v. Athletic Shoe Co., 75 F.(2d) 93 (C.C.A. 7).

Patent No. 1,462,827 (second Riddell) was not applied for until October 5, 1923. The first Riddell patent was issued in the previous July and is therefore prior art against the second. The claims of No. 1,462,827 in issue, with the drawings, disclose no part that does not find its full equivalent in the first Riddell or in Schwarzer. The stud sunk in the inner sole does not project as far as in the first patent but it is fastened by a flanged socket which is nothing more nor less than an elongated lock nut. The cleat has a headed bolt imbedded in it not found in the first Riddell but Schwarzer's cleat did have such a bolt with everything but the head. If

there was no invention in the first Riddell, there is none here.

The single claim of patent No. 1,659,-666 reduced to its simplest features is the combination of the first Riddell patent with a spring steel plate. This is demonstrated by an examination of the two previous Riddell disclosures as well as other prior art patents. Golden used a flexible steel plate "to prevent the inner sole from bulging of cleat pressure." His plate was pierced to receive the nails securing the leather cleats. See, also, Hickson, British Patent No. 25,466—1899; Hart, No. 1,025,078—1912; and Schwarzer, No. 1,391,346—1921. In both Riddell patents and in Schwarzer the cleats were spaced in such way as to be self-cleaning.

In Golden, the studs or nails are free to move vertically through the perforations in the plate. The Golden specifications state "the plate 23 is provided with a plurality of openings through which the fastening members * * * are adapted to pass, the area of the openings being considerably greater than the space occupied by the fastening members, so that when said members are inserted, they pass through the openings without obstruction by the plate." The openings in Golden's plate were larger because each of his leather cleats required a number of nails or rivets. Five nails to each cleat on the football shoes are shown in the drawings, but, when the cleat having one stud was adopted, it was a simple matter for Riddell to reduce the size of the opening for its passage.

It will be noted that Riddell claims that his plate was "adapted to yield for permitting sideways flexing of said cleats and to prevent permanent distortion thereof." But this was nothing new. As pointed out, Hickson's steel plate performed the same function.

Finally, we see no invention in using a steel plate of greater resiliency than had been used before. We think the claim represents nothing more than the exercise of mechanical skill such as might have been expected and falls within the second rule announced in Hug v. Lakewood Eng. Co., 7 F.(2d) 98, 99 (C.C.A. 6); see, also, Newcomb David Co., Inc., v. R. C. Mahon Co., 59 F.(2d) 899, 901 (C.C.A. 6); Stockham Pipe & Fittings Co. v. Ohio Steel Foundry Co., 78 F.(2d) 111, 113 (C.C.A. 6), and John T. Riddell v. Athletic Shoe Co., supra.

Having held all claims sued upon invalid, the question of infringement does not remain to be considered.

The decree is affirmed.