**SPEAKER et al. v. SHALER CO.**
**No. 5906.**

Circuit Court of Appeals, Seventh Circuit.
Feb. 6, 1937.

Rehearing Denied March 2, 1937.

Casanave Young, of Milwaukee, Wis., for appellants.

S. L. Wheeler, W. G. Wheeler, and Leverett C. Wheeler, all of Milwaukee, Wis., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This is an appeal from a decree finding patent to Hanson No. 1,970,698, granted April 21, 1934, assigned to appellee, valid and infringed by appellants; the trademark of appellee infringed; and adjudging appellants guilty of unfair competition and of breach of contract of employment. It is insisted that the court erred in each of these respects.

Appellee is now, and has been for a number of years, engaged in the production of so-called "Hot Patches" vulcanizing units and apparatus for repairing rub-

ber products, especially inner tubes of pneumatic tires. It is the owner of various patents having to do with the art, the one in suit being one of the later developments.

The device consists of a shallow pan or platen containing a solidified fuel and having attached to its bottom a patch of rubber to be vulcanized to the tube being repaired. Vulcanization is brought about by the heat resulting from igniting the fuel in the pan and applying pressure upon the latter by a clamp or equivalent force during the vulcanizing period. The patent does not cover the constituency of the fuel.

Vulcanizing units of this character and clamps to furnish the force to apply the same are found in a prolific prior art. Hanson recited that it was his object to provide a clamping mechanism, with means for holding the fuel in contact with the platen during initial combustion and while the pan is being simultaneously held in pressure relation to the rubber to be vulcanized. Others had previously had the same idea and disclosed it to the world. Among them were Low, No. 1,163,629; Naysmith et al., No. 1,225,845; White, No. 1,234,431; Hagen, No. 1,252,106.

Another object, Hanson said, was to provide improved means for centering the platen or pan upon the patch and preventing it from shifting during adjustment of the clamp; but the same idea was disclosed by previous inventors including Low, Naysmith and White, previously mentioned, Heim, No. 1,270,154, and Low, No. 1,315,731.

The crucial thing upon which appellee relies to establish invention is the fact that in his claims Hanson placed two or more V-shaped notches in the walls of the shallow pan and provided his clamp with spider legs, of which a number, equivalent to the number of notches, were elongated so as to extend below the plane of the other arms of the clamp and to engage in the notches, being V-shaped and coming to a dull blade or edge. These extended arms, fitting into the notches, it was claimed, served to keep the solidified fuel from warping while burning and at the same time to avoid any excessive absorption of heat. In other words, Hanson took an old platen, an old patch, an old body of solidified fuel on one side of the platen and an old clamp and utilized them exactly as they had been utilized before

in vulcanizing with the one addition; that is, the two notches in the wall and the extended arms of the clamp to fit into the same.

Appellants do not make a platen with notches, nor is there any evidence of a clamp made by it with some of the arms extended below the level of the others, but they make a unit with perforations in and just below the upper edge of the wall, so that when appellee's clamp is used in connection with appellants' platen the walls break down into the holes and the same result is achieved as if notches were present. This clearly constitutes contributory infringement, if the claims are valid.

■ But we have seen that all elements of the patent are old except the notches and the two extended arms of the clamp. Both perforations and notches were old in the art, although utilized for purposes different from that proposed by Hanson. The skilled worker in the trade, building vulcanizing units such as these, had the benefit of the teachings of the art disclosing all other features. It is said that the new addition was found necessary to keep the fuel from warping. Obviously, any mechanic would know that, to retain the fuel in its place without warping, it would be essential to attach to the arms of the clamps some projecting parts or elongated portions that would go into or touch the fuel or hold it during the vulcanizing. The most obvious method would be to place lugs on the inner arms of the clamp, extending slightly downward into the pan. Obviously such structure would keep the fuel in place. It is said, however, that such lugs would absorb too much heat and thus interfere with the vulcanizing operation. But again it is clear that lugs may be shaped as sharply or as bluntly and to go as deeply or as shallowly into the fuel as any extension of the arm itself. If the problem of the mechanic was to keep the fuel in place, coupled with the necessity of preventing absorption of too much heat, and he was skilled in the art, with its teachings before him, it seems to us he would immediately solve his problem without difficulty. We cannot believe that in an art crowded with prior teachings, as here, anything more than the exercise of mechanical skill was involved and conclude that the claims are invalid for want of invention.

The District Court found that appellee had used the trade-name "Hot Patches"

for several years; that it had expended much money in advertising, exploiting, and introducing its equipment, developing, prior to this suit, a nation-wide reputation and good will under this name; that among buyers in general the word "Hot Patches" had become associated with appellee's equipment to such an extent as to indicate its product and none other; that the words "Hot Patches" have acquired a secondary meaning, indicative to the public generally, of the product of appellee; and that appellants had no right to use the words "Hot Patch" in description of their equipment of similar character.

Descriptive words, included within the broader category of generic terms, are not valid as trade-marks, for each individual in the community has an equal right to use them. However, if such words have acquired a secondary meaning in the industrial world, the business built up under such secondary connotation will be protected against the use of the term by competitors. As Mr. Justice Holmes, in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S. Ct. 113, 65 L.Ed. 189, said: "Whatever may have been its original weakness, the mark for years has acquired a secondary significance and has indicated the plaintiff's product alone. * * * It means a single thing coming from a single source, and well known to the community. * * * It has · acquired a secondary meaning in which perhaps the product is more emphasized than the producer but to which the producer is entitled."

The doctrine contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, because descriptive, may nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase has come to mean that the article is his product. Merriam Co. v. Saalfield, 198 F. 369 (C.C.A.6). The relief, however, is not granted under the rules applicable to infringement of a trade-mark. Vacuum Oil Co. v. Climax Refining Co., 120 F. 254 (C.C.A.6).

Here there was substantial evidence to support the court's finding of attribution of a secondary meaning and no evidence contradicting the same. Consequently, the court correctly enjoined the use of the words "Hot Patch" by appellants. Such use was an invasion of appellee's right.

It was said, however, that, because appellee has disclaimed the use of the words "Hot Patches" except in so far as its common-law rights are concerned, it is not entitled to protection against the use of the same. As we have pointed out, the right to relief is proper not as protection of an invalid trade-mark but to prevent unfair competition, and arises under the common-law rights of appellee.

We find no evidence to support a charge of unfair competition in any other respect. Complaint was made of appellants' use of appellee's catalogues and the making of prices in competition with those quoted therein on a · lower basis. Bidding in the open market, promoting free competition cannot become unlawful except by legislative enactment.

The court found that appellants had violated the provisions of a contract of employment of appellant Speaker. He was formerly in the employ of appellee. He agreed as a part of his contract to promote appellee's business, to grant to it such improvements and inventions as he might devise, to treat as confidential such information as he obtained in its plant, and not to divulge any of the trade secrets, inventions, processes or other information of value to appellee to any other person for five years after he left the employment.

We have searched the record; we fail to find evidence of violation of the terms of this contract. Appellants were in no wise estopped to assert the invalidity of the patent, even though one of appellants had been active in its development. No rights can be erected upon a void patent claim. The contents thereof were disclosed to the world by filing it in the patent office. Nothing therein could have remained confidential or secret. There is no proof that any of the processes, devices, or improvements of appellee were utilized by appellants in any way other than by the alleged contributory infringement, which, in view of determination of invalidity, fails.

The decree is reversed except as to the relief granted as to the use of the words "Hot Patches," and in that respect it is affirmed.