## SHALER CO. v. RITE-WAY PRODUCTS, Inc., et al.

### No. 1246.

District Court, W. D. Tennessee.

June 22, 1937.

Wheeler, Wheeler & Wheeler, of Milwaukee, Wis., and Henry J. Livingston, of Memphis, Tenn., for plaintiff.

Frank E. Liverance, Jr., of Grand Rapids, Mich., and John B. Snowden, 2d, of Memphis, Tenn., for defendants.

MARTIN, District Judge.

The bill of complaint in this equity cause seeks to restrain the alleged infringement by the defendants of letters patent No. 1,970,698, issued to Harold H. Hanson, covering a portable repair vulcanizer. The original bill included a now-abandoned prayer for recovery on an accounting for profits derived by defendants from the alleged infringment.

By supplemental bill, the plaintiff prays injunctive relief against the alleged infringement of a certain trade-mark and the use of the trade-name "hot" in connection with "patches," pertaining to the plaintiff's patented equipment.

Three questions are presented for decision: (1) Is the patent, No. 1,970,698, a valid patent; and, if so, has it been infringed? (2) Is plaintiff's trade-mark entitled to protection in this court? (3) Is the plaintiff entitled to injunctive relief on the ground of unfair competition against the use by the defendants of the words: "hot patches," or "hot shot," in connection with the advertisement, distribution, and sale of its portable repair vulcanizer and its "patches"?

■ 1. As to the patent, this case is not of first impression, for the reason that, in Speaker v. Shaler Co., 87 F.(2d) 985 (C. C.A.7), the Circuit Court of Appeals for the Seventh Circuit held the identical patent in controversy, No. 1,970,698, invalid for want of invention. The decision of a Circuit Court of Appeals upon the validity of a patent, though not conclusive, is entitled to very great weight in a District Court in another circuit; and, unless it appears by convincing proof and most cogent reasoning upon legal principles that the Circuit Court of Appeals erred, the District Court should conform to the appellate court's opinion.

In Speaker v. Shaler Co., supra, the court considered patent citations from the prior art, which have been put in evidence, also in the instant case, and found essential novelty lacking. The court said (page 986): "Hanson took an old platen, an old patch, an old body of solidified fuel on one side of the platen and an old clamp and utilized them exactly as they had been utilized before in vulcanizing with the one addition; that is, the two notches in the wall and the extended arms of the clamp to fit into the same." The court said further: "We have seen that all elements of the patent are old except the notches and the two extended arms of the clamp." And added: "The skilled worker in the trade, building vulcanizing units such as these, had the benefit of the teachings of the art disclosing all other features." Then, after detailed discussion, concluded: "We cannot believe that in an art crowded with prior teachings, as here, anything more than the exercise of mechanical skill was involved and conclude that the claims are invalid for want of invention."

The basis upon which the decision of the Seventh Circuit Court of Appeals rested seems thoroughly consistent with the principles announced in the most recently decided patent cases in our circuit.

In Vulcan Corporation v. Slipper City Wood Heel Co., 89 F.(2d) 109, 110 (C.C.A. 6), decided March 8, 1937, in holding a patent invalid, Judge Allen, speaking for the court, said: "To entitle an inventor to his monopolistic privilege, he must have exercised some degree of ingenuity, displayed some flash of genius, inspiration, or imagination not within the reach of mere artisanship (A. O. Smith Corp. v. Petroleum Iron Works Co. of Ohio, 73 F.(2d) 531 [C. C.A.6]), and such ingenuity is not here disclosed."

In Detroit Stoker Co. v. Brownell Co., 89 F.(2d) 422, 423 (C.C.A.6), decided April 7, 1937, Judge Simons said:

"However meritorious may be the inventor's thought in terms of result, unless the means adopted in attaining such result are novel and denote invention, either separately or in combination, he may not have a valid patent, for we are dealing with a machine and not a method. Reo Motor Car Co. v. Gear Grinding Machine Co. (C. A.) 42 F.(2d) 965, 968. * * *

"Mere adjustability of a part of a machine or an element in a combination entailing no exercise of the inventive faculty will not rise to the dignity of invention, even though the adjustable feature be new. The cases supporting the principle invoked we think do not go beyond this." (Citing cases).

The opinion quoted from Adams v. Galion Iron Works & Manufacturing Co., 42 F.(2d) 395, 397 (C.C.A.6): "The question of invention must be approached from the standpoint of one skilled in the particular art, not merely one of reasonable mechanical ability in other arts, and consideration must be given to the nature of the problem confronting the patentee. The applicant for a patent is presumed to know of all devices which have already been patented or the subject of prior public use."

The court concluded that the inventor, in seeking to provide operation for the structure of a ram, was confronted with no difficulty not within the reach of a skilled worker in the art, and affirmed the action of the lower court in denying the validity of the patent. See, also, Perfect Circle Co. v. Hastings Manufacturing Co., 88 F.(2d) 813 (C.C.A.6), decided March 4, 1937, citing: Weir Frog Co. v. Porter, 206 F. 670, 674 (C.C.A.6); Grand Rapids Refrigerator Co. v. Stevens, 27 F.(2d) 243 (C.C.A.6); Voightmann v. Perkinson, 138 F. 56 (C.C.A.7); Bullock Electric Manu-

facturing Co. v. General Electric Co., 162 F. 28 (C.C.A.3).

In the aspect of these recent decisions in this circuit, it is manifestly settled law that novelty in invention, and not mere artisanship or skill, is required to support the validity of a patent.

Counsel for the plaintiff urges that the case at bar does not present parallel facts considered determinative in Speaker v. Shaler Co., supra. While some additional evidence has been adduced, which was not in the record before the Circuit Court of Appeals for the Seventh Circuit, the pertinent facts upon which the decision rested are controlling here. Even applying the doctrine, "ut res magis valeat quam pereat," as dictated by Chief Justice Taft in Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L. Ed. 523, nothing appears in this record on the authority of that case requiring the validity of the patent here involved to be upheld, because the facts of the cases are obviously distinguishable.

Numerous authorities cited by astute attorneys for the plaintiff have been given careful examination. No case presented calls for the application of different principles from those which have been applied to the facts of this justiciable controversy.

2. This court is of opinion that the plaintiff is entitled to no injunctive relief resting upon the registered trade-mark in controversy. An applicant for a trade-mark is estopped from obtaining subsequent registration of material disclaimed in previous registrations. In re Continental Oil Co., 75 F.(2d) 217 (Cust. & Pat.App.1935). Cf. Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705.

3. Upon principles of unfair competition, is plaintiff entitled to injunctive relief against the use by defendants in connection with their product of the words "hot patches," or "hot shot" patches?

In Speaker v. Shaler Co., supra, one phase of this question was met. It was held that the Shaler Company was entitled to an injunction against the use of the words "hot patches" by the defendant in that case. The right of the defendant to use some other expression such as "hot shot" patches was not involved. The reason for the conclusion of the court was thus stated (87 F.(2d) 985, at page 987): "Descriptive words, included within the broad-er category of generic terms, are not valid as trade-marks, for each individual in a community has an equal right to use them. However, if such words have acquired a secondary meaning in the industrial world, the business built up under such secondary connotation will be protected against the use of the term by competitors."

After quoting the language of Mr. Justice Holmes in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189, with respect to words which have acquired a secondary meaning, the court said: "The doctrine contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, because descriptive, may nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase has come to mean that the article is his product. Merriam Co. v. Saalfield, 198 F. 369 (C.C.A.6). The relief, however, is not granted under the rules applicable to infringement of a trade-mark. Vacuum Oil Co. v. Climax Refining Co., 120 F. 254 (C. C.A.6)."

It will be noted that the Circuit Court of Appeals for the Seventh Circuit followed the decision of this circuit in Merriam Co. v. Saalfield, supra, 198 F. 369, at page 375, in which it was said: "It is wrong * * * to start with the premise that defendant is entitled to use the word; prima facie, viewed from this point, he is not. The right, for the purposes of such a case, is primarily vested in the complainant. Defendant may not use the word at all, unless he accompanies it with the explanation; he must neutralize an otherwise false impression; he must 'unmistakably inform' the public that the article is of his production (Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. [169] 200, 16 S.Ct. 1002, 41 L.Ed. 118); he must so distinguish that 'no one with the exercise of ordinary care can mistake' (Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 41, 21 S.Ct. 7, 45 L.Ed. 60); he must give 'the antidote with the bane' (Herring, etc., Co. v. Hall's Safe Co., 208 U.S. [554] 559, 28 S.Ct. 350, 52 L.Ed. 616)."

Nothing inconsistent with this doctrine is found in the later case, Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 235 F. 657 (C.C.A.6). The facts in that case clearly distinguish it from the Merriam

Case as well as from the facts of the case at bar.

It appears from this record that the plaintiff, Shaler Company, had for many years used the words "hot patches" extensively in connection with its merchandise, had spent large sums of money in putting its product on the market, had established a nation-wide field of activity, accumulating numerous dealers in its product; had introduced feature advertising, and had stressed with emphasis the words "hot patches." Certainly, the preponderance of evidence shows that these words had acquired a secondary meaning or connotation in connection with plaintiff's product. It is true that the defendants have not simulated the appearance of the package, or packages, used by plaintiff in such manner as to constitute unfair competition; nor have they invaded the rights of the plaintiff in any other respect than in the use of the words "hot patches" and "hot shot" patches.

As far back as Coca-Cola Co. v. Gay-Ola Co., 200 F. 720, 722, 723 (C.C.A.6), Judge Denison said: "In a suit for unfair competition, it is not necessary to show that the immediate purchasers were deceived as to the origin of the goods; but even if they thoroughly understand that they are buying the counterfeit, and not the genuine, the manufacturer of the counterfeit will be enjoined from selling it to dealers with the purpose and expectation that it shall be used by the dealers to deceive the consumer."

In a recent case, Chesebrough Manufacturing Co. v. Old Gold Chemical Co., 70 F.(2d) 383, 384 (C.C.A.6), Judge Moorman said: "It is not contended that the appellee has so closely simulated appellant's trade-marks as to amount to infringement, nor that there is unfairness in the type, shape or form of appellee's jar and cap. The contention is that it has so simulated in coloring and marking the caps, cartons, and labels of the appellant as to mislead the purchasing public. Simulation amounting to unfair competition does not reside in identity of single features of dress or markings nor in indistinguishability when the articles are set side by side, but is to be tested by the general impression made by the offending article upon the eye of the ordinary purchaser or user. If the general impression which it makes when seen alone is such as is likely to lead the ordinary purchaser to believe it to be the original article, there is an unlawful simula-

tion." Citing McLean v. Fleming, 96 U.S. 245, 255, 24 L.Ed. 828; Paris Medicine Co. v. W. H. Hill Co., 102 F. 148, 150 (C.C.A. 6).

Except for the use of the words "hot patches" in the first instances, and later in using "hot shot" in connection with "patches," the defendants have been guilty of no unfair competition. But the use of these words by the defendants does, in the opinion of this court, constitute unfair competition. The words "hot patches," as long used and applied by the plaintiff, have acquired a secondary meaning to such extent that injunctive relief should be granted against the use of the exact expression, or words of like import, by the defendants in connection with their product.

An appropriate decree will be entered enjoining the use by the defendants, or their agents, or persons acting under their authority, of the words "hot patches," "hot shot," or "hot," and "hot shot" in combination with "patches," even with intervening words.

The decree will provide that patent No. 1,970,698 is held invalid for want of invention; and that the plaintiff is entitled to no relief by virtue of any alleged right under the registered trade-mark.