**AMERICAN ALOE CORPORATION,**
**Plaintiff-Appellant,**

v.

**ALOE CREME LABORATORIES, INC.,**
**Defendant-Appellee.**

**No. 17250.**

United States Court of Appeals
Seventh Circuit.

Jan. 9, 1970.

Rehearings Denied Feb. 25, 1970.

David R. MacDonald, James G. Barnes, Chicago, Ill., for appellant; Baker & McKenzie, Chicago, Ill., of counsel.

Charles J. O'Laughlin, James R. McKnight, Chicago, Ill., for appellee.

## ON PETITIONS FOR REHEARING [1]

Before CASTLE, Chief Judge, FAIRCHILD, Circuit Judge and BEAMER, District Judge.[2]

BEAMER, District Judge.

This is an appeal from the Northern District of Illinois involving claims of trademark infringement and invalidity, unfair competition and antitrust violation and counterclaims based on similar charges. The central question before the Court is the validity of defendant-appellee's "ALO-" trade names, and plaintiff-appellant's alleged infringement thereof.

Defendant Aloe Creme Laboratories, Inc. began the sale of an ointment in 1953, and cosmetics in 1957, both containing the gel of the sub-tropical aloe vera plant. The use of the fresh gel from the cut leaves of this plant had long been known to the natives of the region in which it is grown as a remedy for sun burn. Prior to defendant's entry into the market and its development of a process of stabilizing and preserving the gel, it had too short a shelf life to be commercially valuable. Due to defendant's efforts over the intervening years, its products, containing Aloe vera gel, became widely known and commercially successful. Beginning in 1953 and throughout this period, the defendant operated under the trade name "Aloe Creme Laboratories, Inc." Its first product was known under the trade name ALO-CREME OINTMENT which was changed to ALO-OINTMENT in 1963. Commencing in 1957, defendant began the manufacture of various cosmetics known as ALO-CREME FACE, and ALO-CREME HANDS, and ALO-CREME BODY, which names were abbreviated to ALO-FACE, ALO-HANDS, and ALO-BODY in 1963. Since 1963, the defendant has also used the trademarks ALO-PLUS, TRAV-ALO, ALO-MOISTURE PLUS, ALO-V SKIN CLEANSER, ALO-BEAUTY MATTE, ALO-TONE, ALO-ROUGE, ALO-LIPSTICK, ALO-POUDRE, ALO-V SHAMPOO, ALO-COSMETICS, ALO-CABANA SET, ALO-LEGS, FASHION TAN and AFTER TAN, all of which were the subject of trademark registrations.

Plaintiff commenced operations on January 20, 1964, and made its first sales of products bearing trademarks on March 8, 1965. Plaintiff adopted as its trademarks, HOUSE OF ALOE, ALOE ESSENCE, DESIGN OF PLANT, JEL D'ALOE, MASQUE OF ALOE and TROPICALOE. After defendant notified plaintiff of its claim to a family of ALO trademarks which it claimed was infringed by plaintiff's use of ALOE in its trade names, plaintiff commenced this action asking a declaratory judgment finding defendant's trademarks invalid and upholding plaintiff's right to use its ALOE trademarks, together with a claim of unfair competition and antitrust violation. Defendant counter-

---

[1]. On consideration of the petitions for rehearing filed by each of the parties and the answer of defendant-appellee to plaintiff-appellant's petition (filed at the request of the Court) the opinion filed herein July 31, 1969, is withdrawn and this *opinion is adopted as the opinion of the Court.*

[2]. Judge Beamer is sitting by designation from the Northern District of Indiana.

claimed for trademark infringment and unfair competition. The district court found for the defendant-counterclaimant on all issues, dismissed the complaint, awarded treble damages and enjoined the plaintiff from using ALOE in its trade names or trademarks.

■ Central to a determination of the issues in this case is whether defendant's use of the term ALO- is sufficient to preclude others from using the words Aloe or Alo. Also in question is defendant's claim to trademark registration of "ALO- and Design". We hold that defendant has no trademark rights, through use or registration, in the term "ALO-" by itself.

Aloe is the generic name of a large genus of succulent plants and of the drugs prepared from the aloe vera variety of that plant. (Webster's New International Dictionary, 2d ed. 1934.) In particular, for purposes of this case, it is the generic name for the gel of the Aloe vera plant. It is undisputed that in the absence of a strong showing of secondary meaning, a generic name cannot be the basis of a trademark. Kellogg Co. v. National Biscuit Co., 305 U. S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938) (shredded wheat); Henry Heide, Inc. v. George Ziegler Co., 354 F.2d 574 (7th Cir.1965) (ju-jubes); Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., 343 F.2d 655 (7th Cir.1965) (yo-yos).

Defendant concedes that this is the law, but maintains that it is not marketing "Aloe" as such, but is selling cosmetics containing Aloe, which are not encompassed within the generic or descriptive name and with respect to which the word "Aloe" is at most, suggestive. In view of the fact that Aloe is the distinguishing ingredient in defendant's products upon which its claims to special effectiveness are based, the Court must find that "Aloe" is the generic and descriptive term for that class of cosmetics containing Aloe and that any claim to a trademark in the name must be based on "secondary meaning".

The case is unlike Coca-Cola Co. v. Koke Co. of America, 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920) where the term Coke or Coca was originally descriptive of the extract of Coca leaves, or cocaine contained in the plant, but which lost this generic sense when the plaintiff was compelled to remove any effective cocaine from the product, after which Coca or Coke acquired a purely secondary meaning. Neither is this case controlled by those decisions which have found that exact copies or phonetic equivalents infringe purely suggestive names which have acquired trade name significance, such as Douglas Laboratories Corp. v. Copper Tan, Inc., 210 F.2d 453 (2nd Cir.1954) which said "copper tone" for sun tan lotion was suggestive rather than descriptive, and Orange Crush Co. v. California Crushed Fruit Co., 297 F. 892 (D.C.Cir.1924) which said "Crush" was not descriptive of a soft drink and was not used in its generic sense; nor is it in the same class with those which hold that terms having a general descriptive but not denominative sense acquired secondary meaning. Keller Products, Inc. v. Rubber Linings Corp., 213 F.2d 382, 47 A.L.R.2d 1108 (7th Cir.1954) (Tub Cove v. Tub Kove); Speaker v. Shaler Co., 87 F.2d 985 (7th Cir.1937) (Hot Patches v. Hot Patches —for vulcanizing products); Barton v. Rex-Oil Co., Inc., 29 F.2d 474 (3rd Cir. 1928) (Dynashine v. Dye & Shine—for shoe polish). It must also be distinguished from the Supreme Court's decision in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1939) where the essentially descriptive and denominative term "nu-enamel" had acquired a secondary meaning at least partially through its widespread application to products other than enamel—such as paint brushes.

This case is properly classified with those where the term in question was the common name for the article sold and hence denominative of that article regardless of source. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938) (shredded wheat); Henry Heide, Inc. v. George Ziegler Co., 354 F.2d 574 (7th Cir.1965) (ju-jubes); Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., 342 F.2d 655 (7th Cir.1965) (yo-yos) and particularly with those cases where the term was denominative of the prime or distinguishing ingredient in the product. Compare LeBlume Import Co. v. Coty, 293 F. 344 (2nd Cir.1923) (Lorigan v. L'Origan de Coty—for perfume); Pinaud, Inc. v. Huebschman, 27 F.2d 531 (E.D.N.Y.1928) (Lilas De France v. Lilas De France—for perfume); Wells & Richardson Co. v. Siegel, Cooper & Co., 106 F. 77 (N.D.Ill.1900) (Celery Compound v. Celery Compound) with Dixi-Cola Laboratories, Inc. v. Coca-Cola Co., 117 F.2d 352 (4th Cir.1941) (cola v. cola —for soft drink containing extract of cola nut). It is clear from an examination of the cases that while the test may be stated in the same language in both types of cases, it is much more difficult to establish secondary meaning in a denominative term (as used herein) than in a purely descriptive one.

The criteria for determining whether a denominative term has acquired the necessary secondary meaning to be a trademark are best described in the language of the Supreme Court in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73, 79 (1938):

It is contended that the plaintiff has the exclusive right to the name 'Shredded Wheat,' because those words acquired the 'secondary meaning' of shredded wheat made at Niagara Falls by the plaintiff's predecessor. There is no basis here for applying the doctrine of secondary meaning. The evidence shows only that due to the long period in which the plaintiff or its predecessor was the only manufacturer of the product, many people have come to associate the product, and as a consequence the name by which the product is generally known, with the plaintiff's factory at Niagara Falls. But to establish a trade name in the term 'shredded wheat' the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer.

In the recent decision of Henry Heide, Inc. v. George Ziegler Co., 354 F.2d 574, 576 (7th Cir.1965) dealing with the term "ju-jubes" for fruit flavored gum candy, this Court said: "But more importantly, a generic term in circumstances such as those before us may not be exclusively appropriated as a trademark, regardless of the length of time it may have been used by a single distributor at the consumer level and despite whatever promotional effort he may have expended to exploit it." See Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., 432 F.2d 655 (7th Cir. 1965); Dixi-Cola Laboratories, Inc. v. Coca-Cola Co., 117 F.2d 352 (4th Cir. 1941).

The defendant-appellee, Aloe Creme Laboratories, Inc., here seeks to accomplish what the courts prohibited in the above cases. Having originated the use of a stabilized aloe gel in cosmetics and maintained a natural and legal monopoly in the product over a relatively long period of time, it seeks to prevent others from successfully competing in the Aloe cosmetic market by foreclosing their effective promotion of aloe products. Defendant cannot appropriate for its own trademark use the generic name of the distinguishing and effective ingredient in its product. Defendant has neither patent rights in the "ingredient concept" of using Aloe in cosmetics nor a legal right to maintain a monopoly in

Aloe cosmetics. By using the phonetic equivalent of the generic name as the sole common and distinguishing mark of its products, defendant invited confusion. Until 1963, defendant differentiated its product by the name ALO-CREME, which would have come nearer to maintaining its trademark significance, but in the two to three years between the adoption of the singular ALO- and the filing of this suit, "Aloe" or "Alo" did not lose its generic meaning or denominative sense. Those cases relied upon by defendant to establish the secondary meaning in the name of a plant used as an ingredient are distinguishable.

In LeBlume Import Co. v. Coty, 293 F. 344 (2nd Cir.1923) the court found that Lorigan, or L'Origan, although generic when applied to a particular genus of plant, had come to mean the blended perfume produced by Coty, and not the fragrance of the particular plant. It laid stress on the fact that the perfume in question was a blend, unidentifiable with the genus of plants whose name it bore. In contrast, both plaintiff's and defendant's products here are promoted for their common ingredient—Aloe—with which both product lines are clearly identifiable. The defendant here cannot seek to promote its products by stressing the active ingredient which is available to all and also claim that the only proper name of that ingredient has lost its primary generic significance.

In Pinaud, Inc. v. Huebschman, 27 F. 2d 531 (E.D.N.Y.1928) the Court found that the French expression Lilas De France, when applied to a perfume long manufactured and promoted by one company, had acquired a secondary meaning, but it also indicated that the English counterpart of the same words, "French Lilac," was purely descriptive and without secondary meaning. In Wells & Richardson Co. v. Siegel, Cooper & Co., 106 F. 77 (N.D.Ill.1900) the Court found that the expression "Celery Compound" had acquired a secondary meaning and that others could not copy it, but it did

not find that "Celery" had acquired a similar meaning. Thus a term which in itself does not have trademark significance may be combined with others in such a manner as to mean one product and one manufacturer only. While "Aloe" and "Hands" may both be generic terms—as are most words—their combination in the phrase "ALO-Hands" may constitute a valid trademark as found by the Patent Office in issuing a registration for that term. Therefore, here the Court holds that the various ALO- trademarks of defendant in themselves are valid, but cannot be considered to have established a secondary meaning in the word Aloe itself. Others may not copy the exact trademarks used by defendant, because those have come to mean defendant's products exclusively, but they may use the word "Aloe" as part of their own trademark, just as defendant has done.

Defendant contends, and the trial court found, that it has a "family of ALO- trademarks" such as to preclude others from using the term "Aloe" in their trade names. This conclusion must be reversed. It is apparent that a generic term cannot be the basis of a family of trademarks such as to preclude others from using the term unless the term has acquired a "secondary meaning". Compare Lauritzen & Co., Inc. v. Borden Company, 239 F.2d 405, 44 C.C.P.A. 720 (1956) with Motorola, Inc. v. Griffiths Electronics, Inc., 317 F.2d 397, 50 C.C. P.A. 1518 (1963). The family of trademarks doctrine is essentially similar to that of "secondary meaning". Without "secondary meaning" there is no "family of trademarks" in the sense defendant contends here. The lack of a "family of ALO- trademarks" does not, of course, invalidate each of defendant's registered trade names which share the "ALO-" term. Each trade name in itself may be distinctive enough to create a valid trademark even though the common term among the group has not achieved sufficient secondary meaning to preclude others from using the term.

Having determined that the generic term "ALO-" has neither achieved trademark significance, nor become the basis of a "family of trademarks", we now examine defendant's claim of trademark registration of "ALO- and Design" in Registration No. 804,536.

 The trial court in its finding of fact No. 16 found: "Defendant is the owner of the following trademarks and registrations therefor issued to it by the United States Patent Office: * * * No. 804,536 for ALO- and Design.

* * * " This portion of finding No. 16 is clearly erroneous. Trademark Registration No. 804,536, while owned by the defendant, is not for "ALO- and Design", but rather for "Queen Nefertiti ALO and Design". This fact is made clear by the history of defendant's application for registration and the proceedings thereafter in the Patent Office.

On July 30, 1964, defendant applied for registration of "ALO- and design of a plant". The following drawing was submitted by the defendant:

[A822]

The Patent Office treated this as an application for a trademark for "ALO and Design"; the Patent Office dropped the hyphen after ALO presumably because the drawing submitted included no hyphen.

On February 3, 1965, the Patent Office sent defendant notice of its refusal to register "ALO and Design". Among other reasons for the refusal, the Trademark Examiner pointed out that the mark was "merely descriptive of the goods * * * in that it sets forth the substance from which the preparations are made together with a representation thereof, inasmuch as ALO is short for Aloe which is the genus designation for the species Aloe Vera and others."

Defendant's application for registration included a specimen of the following mark which had been used in defendant's advertising:

[A823]

---

The Patent Office pointed out that this drawing could not be the basis of a registered mark in "ALO and Design" by itself since the word ALO and the design of the plant "is tied in with the portrait of Queen Nefertiti and *does not create a separate impression.*" (Emphasis added.) The Patent Office required the defendant to add the words "Queen Nefertiti" and her portrait to the drawing originally submitted. Defendant was further required to include a disclaimer of registration of the word "ALO" and the representation of the aloe vera plant.

Defendant amended its application to include the disclaimer of registration of ALO and representation of plant and submitted a new drawing which included the words "Queen Nefertiti" and the portrait of the Queen. The Patent Office then renamed the amended application "Queen Nefertiti ALO and Design". Defendant was sent notice that the "Queen Nefertiti ALO and Design" mark would be published on December 14, 1965. On March 1, 1966, the mark was registered and received No. 804,536.

A serious question as to defendant's good faith is raised by its claim that in No. 804,536 it owns the registration for "ALO- and Design." The Patent Office specifically rejected defendant's application for registration of "ALO and Design" stating that "ALO" is a descriptive term. There can be no claim that "ALO and Design" as included in "Queen Nefertiti ALO and Design" has separate significance since the Patent Office informed defendant that the "ALO and Design" does not create a separate impression. Furthermore, in obtaining registration for "Queen Nefertiti ALO and Design" defendant *specifically disclaimed* registration rights in "ALO and the representation of the aloe plant" (as

it was required to do by the Patent Office).

Defendant's questionable use of No. 804,536 began even before the mark was registered. On February 21, 1966, defendant sent letters to several hundred retailers in which it claimed to be the owner of "ALO- and design," a trademark "registered in the United States Patent Office." This letter, which threatened to "take whatever steps necessary" to stop "newly promoted competitors" from infringing on this and other trademarks, was sent nearly two weeks before the Patent Office registered the "Queen Nefertiti ALO and Design" mark.

■■■ In light of the foregoing, we remand this case for a redetermination of the question of defendant's unfair competition. We overrule the finding that defendant is the owner of a registered "ALO- and Design" trademark. We hold that defendant's use of the generic term "ALO-" has not created a secondary meaning in that word, and therefore, defendant has no exclusive trademark rights in the word "ALO-" by itself. We reverse the trial court's conclusion that defendant owns a "family of ALO- trademarks" such as to preclude others from using the word "Aloe" in their trade names.

■ We reverse the trial court's conclusion that plaintiff's TAN LIFE infringed defendant's FASHION TAN and AFTER TAN trademarks, because the only common word, "tan," is too descriptive to be the basis of trademark rights under the facts of this case.

On the basis of these conclusions we reverse the district court's holding that plaintiff was guilty of trademark infringement. We leave to the district court the determination of whether plaintiff was guilty of unfair competition absent a showing of trademark infringement.

■■ Finally, we come to the question of whether defendant is guilty of violating the antitrust laws by its use of its growers' supply contracts and its drugstore franchise agreements. We affirm the conclusions of the trial court that defendant's drugstore franchise agreements were not used in violation of the antitrust laws. However, we must set aside the conclusion of the trial court that defendant's growers' supply contracts were not used in violation of the antitrust laws since the district court's findings of fact are insufficient to support this conclusion.

■ Before there can be a conclusion as to whether there has been a substantial lessening of competition, monopolization, or a contract in restraint of trade, a determination must be made as to what are the relevant product markets within which to gauge a firm's power or the effect of its activities. In Brown Shoe Co. v. United States, 370 U.S. 294, 325, 82 S.Ct. 1502, 1523, 8 L.Ed.2d 535 (1962) the Supreme Court stated:

> The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. However, within this broad market, well defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes.

Factors such as a product's peculiar characteristics and uses, distinct prices, and sensitivity to price changes are all indicia which may be used in determining boundaries of a submarket.

The findings of fact made by the trial court do not provide a basis for its conclusion that the cosmetics industry is the relevant market. On remand, the district court should re-examine this question weighing the factors set out in the *Brown Shoe* opinion. It will be necessary to make a determination whether there exists a separate market for aloe vera leaves. The district court will also need to inquire whether aloe vera products constitute a submarket of the cosmetic industry.

Once the district court has decided which product markets are relevant for antitrust consideration, the effect of defendant's growers' supply contracts will have to be weighed within those markets. The ease of entry into these markets and the cost of aloe vera leaves to defendant and its competitors are findings of fact which will have to be made. On the basis of these findings, the district court will be able to decide the issues raised by plaintiff's charges of antitrust violation based on the defendant's exclusive contracts with the growers of a large percentage of aloe vera leaves produced in the United States.

Affirmed in part and reversed in part.

Remanded to the district court for further proceedings consistent with this opinion.

Appellant shall recover its costs of appeal.